[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14396
_____

D.C. Docket No. 9:12-cv-81416-WPD


CHRISTOPHER J. WEILAND,

Plaintiff-Appellant,

versus

PALM BEACH COUNTY SHERIFF'S
OFFICE,
DEPUTY CHRISTOPHER FLEMING,
individually,
DEPUTY MICHAEL JOHNSON,
individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 8, 2015)

Before ED CARNES, Chief Judge, and RESTANI,[*] Judge, and ROBRENO,[**] District Judge.

ED CARNES, Chief Judge:

Nearly one hundred and thirty years ago, one of Georgia's greatest judges described the ideal in pleading:

> Pleading is pure statement; just as much as a letter addressed to your sweetheart or your wife or your friend.  The plaintiff complains that he has such a case, and he tells you what it is.  The defendant says either that that is not so, or something else is so, and he makes his statement.  The true rule ought to be this:  the statement ought to consist precisely of what has to be [proven].  It ought not to fall short, or go beyond.  If it goes beyond, it has surplusage matter that is unnecessary.  Whatever is irrelevant, whatever is non-essential in statement, ought not to be in.  Let the law declare that every man's pleadings shall embrace a full and clear statement of all matters of fact, which he is required to [prove], and no other.

Logan Bleckley, "Pleading," 3 Ga. Bar Assoc. Report 40, 41–42 (1886).  The complaint that gave rise to this appeal does not approach that ideal, but it claims that the plaintiff has a case, and parts of it do a good enough job in telling what that case is to require the defendants to say "either that that is not so, or something else is so."

---

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

[**] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

2

The story that Christopher Weiland's complaint tells is about two Palm Beach County Sheriff's Office deputies shooting, tasering, and beating him in his own bedroom without warning or provocation during their response to a "Baker Act call."[1]  Finding that the latest version of Weiland's complaint failed to comply with Federal Rules of Civil Procedure 8(a)(2) and 10(b), the district court dismissed with prejudice his § 1983 claims against the deputies and the Sheriff's Office.  As an alternative ground for the dismissal of the § 1983 claims against the Sheriff's Office, the court found that Weiland had failed to plausibly allege a custom or policy of deliberate indifference sufficient to impose municipal liability. The district court also dismissed on sovereign immunity grounds two of his three state law claims; the third one it remanded to state court.  This is Weiland's appeal.

I.

The allegations in Weiland's third amended complaint, which we accept as true for present purposes, are as follows.

On April 6, 2007, Weiland's father called 911 and stated that his son — who at the time suffered from bipolar disorder — was "acting up," was "on drugs" (prescription painkillers), and "probably ha[d] a gun."  This was not the first time

---

[1] The Baker Act is a Florida law that permits a person to be "involuntarily examin[ed]" by a mental health facility "if there is reason to believe that the person has a mental illness and because of his or her mental illness . . . [t]here is a substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others . . . ."  Fla. Stat. § 394.463(1)(b)(2).

the Sheriff's Office had dealt with the younger Weiland; in fact, he had been "Baker Acted" on at least two earlier occasions after threatening to harm himself.

Deputies Christopher Fleming and Michael Johnson were dispatched to the Weiland residence. Weiland's father met them outside of the house and explained that his son had threatened to harm himself and that he might have a gun. As he escorted the deputies into the house, he told them that Weiland was in a bedroom at the end of a hallway.

Fleming and Johnson, guns drawn, approached the bedroom without calling out or identifying themselves. The deputies "came upon [Weiland] sitting on the edge of a bed looking down at a shotgun that lay loosely in his lap." Suddenly and without warning, Johnson fired two rounds at Weiland, knocking him off the bed.[2] As Weiland lay on the floor bleeding and critically injured, Fleming tasered him. Then both Johnson and Fleming "physically beat and assault[ed] [Weiland] before finally handcuffing one of his hands to a dresser." At no point did Weiland raise the shotgun from his lap or point it at the deputies.

In an effort to cover up their assault on Weiland, Johnson and Fleming "fabricated an elaborate story about [Weiland] running from them into another room, grabbing a shotgun, sitting in a chair and then pointing the gun at the

---

[2] The complaint does not say what happened to the gun that "lay loosely" on Weiland's lap before he was knocked off the bed.

4

Deputies as they entered the doorway." They also said that Weiland's gun had discharged during the scuffle.

Weiland was charged with two counts of aggravated assault on a law enforcement officer and incarcerated for nearly two years awaiting trial. And then at his trial:

> [Fleming] and [Johnson]'s story fell apart . . . . No blood was found in the office/bedroom they claimed Weiland ran into before he armed himself and was subsequently shot. No buckshot or other projectiles were recovered from a hole in the office wall [Fleming] and [Johnson] claimed was from [Weiland]'s alleged shotgun blast. In fact, during trial, it was revealed that [Johnson] had removed [Weiland]'s shotgun from the so-called crime scene to another unknown location, finally returning and placing it in the custody of crime scene investigators nearly 7-8 hours after the incident.

The jury acquitted Weiland of the charges against him.

## II.

Weiland filed this lawsuit in state court on January 12, 2011. His original complaint and first amended complaint asserted only state law claims. On December 17, 2012, Weiland filed a second amended complaint that added multiple claims under 42 U.S.C. § 1983. The defendants removed the case to the Southern District of Florida and filed a motion to dismiss.

In May 2013 the district court dismissed without prejudice all of Weiland's § 1983 claims. It concluded that the four counts asserting those claims violated Rule 8(a)(2) and Rule 10(b) of the Federal Rules of Civil Procedure because they

"incorporate[d] all of the factual allegations contained in paragraphs 1 through 30 inclusive, fail[ed] to identify which legal theories or constitutional amendments govern which counts, and fail[ed] to identify which allegations are relevant to the elements of which legal theories." Even though it dismissed all of Weiland's federal claims, the district court observed that "viewing the alleged facts in the light most favorable to Weiland . . . Defendants violated Weiland's fourth amendment constitutional rights when they shot him." The court gave Weiland until May 29, 2013 to amend his complaint.

On that deadline, Weiland filed a third amended complaint, which is the operative one in this case. The first 49 paragraphs of the third amended complaint consist of an introductory statement (paragraph 1), a jurisdiction section[3] (paragraphs 2 through 5), a parties section (paragraphs 6 through 9), and a facts section (paragraphs 10 through 49). The facts section has three subsections: (1) "Facts Surrounding the Shooting of [Christopher Weiland]" (paragraphs 10 through 32); (2) "[The Sheriff's Office's] Deliberate Indifference" (paragraphs 33 through 38); and (3) "[The Sheriff's Office's] Coverup" (39 through 49). The remainder of the complaint is organized into seven counts, each of which begins,

---

[3] The jurisdiction section of the third amended complaint is unchanged from the three earlier versions of the complaint, all of which asserted facts relevant to jurisdiction in the Florida state court where this case was originally filed. Defendants removed the case from that court to federal court after Weiland filed his second amended complaint and added § 1983 claims, making the case removable under 28 U.S.C. § 1441(a). Weiland never filed a motion to remand or otherwise challenged the jurisdiction of the federal court, and it is clear that federal subject matter jurisdiction does exist in this case. See 28 U.S.C. §§ 1331, 1343(a)(3).

"Plaintiff realleges and reavers the allegations of paragraphs 1– 49 inclusive, and alleges further . . . ."

The first four counts are § 1983 claims.  Count one claims that Fleming, Johnson, and John Doe Deputies,[4] acting under color of state law, violated Weiland's constitutional rights by "using excessive and unreasonable force." Count two claims that the Sheriff's Office "did not adequately train or supervise its Sheriff Deputies in . . . [the use of] appropriate and proportioned force" in detaining mentally ill citizens.  Count three claims that Fleming, Johnson, and the Sheriff's Office conspired to cover up their violations of Weiland's constitutional rights.  And count four claims that the Sheriff's Office had a custom or policy of using its internal affairs investigations to "perpetrate a coverup of any misconduct by Deputies."

The final three counts of the complaint are brought under Florida tort law and allege excessive use of force (count five), intentional infliction of emotional distress (count six), and malicious prosecution (count seven).  All three of those claims are brought only against the Sheriff's Office.

Defendants moved to dismiss the third amended complaint.  On August 28, 2013, the district court issued an order granting in part and denying in part

---

[4] "As a general matter, fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).  Because the "John Doe Deputies" are not proper parties to this action, we will not mention them again.

defendants' motion to dismiss and remanding the remainder of the action to state court. The court dismissed all four of the § 1983 claims (counts one through four) — this time with prejudice — because the pleading of them "duplicate[d] the violations of Rule 8(a)(2) and 10(b) which formed the basis of the [c]ourt's [earlier] dismissal of th[o]se counts." The court also concluded, with respect to three of the § 1983 claims asserted against the Sheriff's Office, that the "allegations . . . fail[ed] to provide any factual support . . . beyond merely referring to alleged practices and policies promulgated by [the Sheriff's Office]."[5]

As an alternative ground for dismissal of counts two and four, which alleged that the Sheriff's Office failed to adequately train its deputies and maintained a custom or policy of covering up constitutional violations, the court determined that Weiland did not state a claim upon which relief could be granted because he failed to plausibly allege an official policy or custom, as is required for municipal liability under § 1983.

As an alternative ground for the dismissal of the part of count three that involves the Sheriff's Office itself, the court ruled that Weiland's allegations of conspiracy among Fleming, Johnson, and the Sheriff's Office were "conclusory" as to the Sheriff's Office. But not as to Fleming and Johnson, as the court added in

---

[5] Though not explicit in the court's order, the clear implication is that it believed that count one provided enough "factual support" to state a claim against the individual deputies and would have survived the motion to dismiss if not for its perceived violations of Rules 8(a)(2) and 10(b).

a footnote: "However, the [c]ourt finds that with respect to Defendants Fleming and Johnson, the Plaintiff has pled sufficient facts to meet the pleading requirements for a conspiracy." Just as the court had earlier observed that Weiland's second amended complaint stated a Fourth Amendment claim, it found that his third amended complaint stated a conspiracy claim even though it had dismissed that claim based on Rules 8(a)(2) and 10(b).

Finally, the court concluded that sovereign immunity barred Weiland's state law claims for intentional infliction of emotional distress and malicious prosecution and dismissed them for that reason. The court, however, took "no position" on whether Weiland had stated a claim under Florida law for excessive force; instead, it declined to exercise supplemental jurisdiction and remanded that claim to state court.

## II.

## A.

We first address whether the district court abused its discretion when it dismissed Weiland's constitutional claims against Johnson and Fleming in counts

one and three of the complaint[6] for failure to comply with Federal Rules of Civil Procedure 8(a)(2) and 10(b).[7]

1.

It is unclear from the district court's order what authority it relied on in dismissing the claims against Johnson and Fleming. The order does not cite Rule 41(b) — which authorizes the dismissal with prejudice of an action for failure to obey a court order or a federal rule — nor does it make the findings necessary to justify a dismissal under that provision. See Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985) ("The legal standard to be applied under Rule 41(b) is whether there is a clear record of delay or willful contempt and a finding that lesser sanctions would not suffice.") (quotation marks omitted). For that reason, we will not assume that the court was acting under Rule 41(b). And given the court's observations that Weiland's allegations against Johnson and Fleming could state a claim for relief, we infer that the dismissal of those particular claims was not based on the failure to state a claim under Rule 12(b)(6).

With Rule 41(b) and Rule 12(b)(6) off the table, we are left to conclude that the dismissal of Weiland's claims against the two deputies was based on the

---

[6] For the sake of simplicity, in the remainder of this opinion we refer to the third amended complaint as simply "the complaint," except where necessary to distinguish between it and one of the three earlier versions of Weiland's complaint.

[7] Because we affirm on other grounds the district court's dismissal of Weiland's claims against the Sheriff's Office, see infra Part II.C, we limit the discussion in this section to the claims asserted against Johnson and Fleming in counts one and three.

10

district court's inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2) and Rule 10(b). Our standard of review of such dismissals is abuse of discretion. See Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337 (11th Cir. 2005) ("We review for abuse of discretion a district court's dismissal for failure to comply with the rules of court.").

Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) further provides:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence — and each defense other than a denial — must be stated in a separate count or defense.

2.

Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings." The first published opinion to discuss shotgun pleadings in any meaningful way (albeit in a dissenting footnote), described the problem with shotgun pleadings under the federal rules. See T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520 (11th Cir. 1985). The footnote, which began by quoting Rules 8(a)(2) and 10(b), commented:

11

The purpose of these rules is self-evident, to require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not. "Shotgun" pleadings, calculated to confuse the "enemy," and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked, are flatly forbidden by the [spirit], if not the [letter], of these rules.

Id. at 1544 n.14 (Tjoflat, J., dissenting).[8]   That footnote described the complaint at issue in T.D.S. as "a paradigmatic shotgun pleading, containing a variety of contract and tort claims interwoven in a haphazard fashion."  Id.

T.D.S. was this Court's first shot in what was to become a thirty-year salvo of criticism aimed at shotgun pleadings, and there is no ceasefire in sight.[9]  Some of our shooting, which has mostly been done with nonlethal dicta, has at times been nearly as lacking in precision as the target itself.  At times we have used the

---

[8] The last thirteen words of the quoted passage from the opinion actually say "are flatly forbidden by the letter, if not the spirit, of these rules."  Because we are sure that the words "spirit" and "letter" were inadvertently transposed in the opinion, we have switched and bracketed them in our quotation of it.

[9] See, e.g., Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1125 n.2 (11th Cir. 2014) (citing twenty-one published opinions condemning shotgun pleadings); Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 979 n.54 (11th Cir. 2008) ("[S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times."); Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.9 (11th Cir. 2002) ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay."); see also Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

term "shotgun pleading" to mean little more than "poorly drafted complaint."[10]  In the hope that we could impose some clarity on what we have said and done about unclear complaints, we have examined more than sixty published decisions issued since the T.D.S. decision in 1985.  One thing we looked for is how many types of shotgun pleadings have been used, wittingly or unwittingly, by attorneys and litigants.

Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings.  The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that

---

[10] While plaintiffs have the responsibility of drafting complaints, defendants are not without a duty of their own in this area.  We have said that a defendant faced with a shotgun pleading should "move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement."  Anderson, 77 F.3d at 366.  But we have also advised that when a defendant fails to do so, the district court ought to take the initiative to dismiss or strike the shotgun pleading and give the plaintiff an opportunity to replead.  See Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1280 (11th Cir. 2006) ("Given the district court's proper conclusions that the complaint was a shotgun pleading and that plaintiffs' [sic] failed to connect their causes of action to the facts alleged, the proper remedy was to order repleading sua sponte."); Cramer v. Florida, 117 F.3d 1258, 1263 (11th Cir. 1997) ("[W]e note that the district court, acting on its own initiative, should have stricken [the shotgun pleading] and instructed counsel to replead their cases. . . .").  Where a plaintiff fails to make meaningful modifications to her complaint, a district court may dismiss the case under the authority of either Rule 41(b) or the court's inherent power to manage its docket.  See Betty K. Agencies, 432 F.3d at 1337.

However, "a dismissal with prejudice, whether on motion or sua sponte, is an extreme sanction that may be properly imposed only when:  '(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice.'"  Id. at 1337–38 (emphasis omitted) (quoting World Thrust Films, Inc. v. Int'l Family Entm't, Inc., 41 F.3d 1454, 1456 (11th Cir. 1995).

13

came before and the last count to be a combination of the entire complaint.[11]  The

next most common type, at least as far as our published opinions on the subject

———————————

[11] See, e.g., Keith v. DeKalb Cnty., 749 F.3d 1034, 1045 n.39 (11th Cir. 2014) ("The complaint, through its incorporation into successive counts all preceding allegations and counts, is a quintessential 'shotgun' pleading. . . ."); Paylor, 748 F.3d at 1126 (stating that a shotgun pleading occurs where each count adopts the allegations of all preceding counts); Thompson v. RelationServe Media, Inc., 610 F.3d 628, 650 n.22 (11th Cir. 2010) (Tjoflat, J., concurring in the appeal, No. 07-13225, and dissenting in the cross-appeal, No. 07-13477) (finding "a typical 'shotgun' pleading" where "each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading"); PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 806 & n.4 (11th Cir. 2010) (finding a "typical shotgun pleading" where the last of a complaint's ten counts "amounts to an amalgamation of all counts"); Weissman v. Nat'l Ass'n of Sec. Dealers, Inc., 500 F.3d 1293, 1311 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (stating that the practice of incorporating each count's allegations into successive counts is the "cardinal sin of 'shotgun' pleading"); United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006) (finding that the complaint was a "typical shotgun pleading" where each count incorporated all previous allegations); Wagner, 464 F.3d at 1279 ("Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense."); Daewoo Motor Am., Inc. v. Gen. Motors Corp., 459 F.3d 1249, 1264 n.7 (11th Cir. 2006) (Tjoflat, J., specially concurring) (finding that the complaint was "a typical 'shotgun pleading' containing multiple counts, each incorporating by reference all the (usually irrelevant) allegations of previous counts. . . ."); SEC v. Diversified Corporate Consulting Grp., 378 F.3d 1219, 1221 n.2 (11th Cir. 2004) ("[Plaintiff's] complaint is a typical shotgun pleading in that each count incorporates by reference every allegation preceding it.") (citation omitted); Ambrosia Coal & Constr. Co. v. Pagés Morales, 368 F.3d 1320, 1330 n.22 (11th Cir. 2004) (finding a shotgun pleading where "[m]any [counts] adopt the material allegations of the preceding counts or paragraphs such that some counts appear to state more than one cause of action"); Lumley v. City of Dade City, 327 F.3d 1186, 1192 & n.13 (11th Cir. 2003) (finding a shotgun pleading where "[e]ach count incorporates by reference the allegations of the preceding counts and thus includes allegations that are irrelevant to the cause(s) of action the count ostensibly states"); Strategic Income Fund, 305 F.3d at 1295 ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions."); Sikes v. Teleline, Inc., 281 F.3d 1350, 1356 n.9 (11th Cir. 2002) ("We note that the plaintiffs' complaint is yet another example of what we have often criticized as 'shotgun pleadings,' where each count 'incorporates' all of the preceding paragraphs and counts."), abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 646, 661, 128 S. Ct. 2131, 2137, 2145 (2008); Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) ("Each count incorporates by reference the allegations made in a section entitled 'General Factual Allegations' — which comprises 146 numbered paragraphs — while also incorporating the allegations of any count or counts that precede it."); Moore v. Am. Fed'n of Television & Radio Artists, 216 F.3d

14

reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.[12] The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.[13] Fourth,

---

1236, 1240 (11th Cir. 2000) (dubbing the complaint a shotgun pleading because it was "96 pages long with 232 numbered paragraphs; [and] each count incorporate[d] by reference all previous paragraphs"); BMC Indus., Inc. v. Barth Indus., Inc., 160 F.3d 1322, 1326 n.6 (11th Cir. 1998) (describing as "a quintessential example" of a shotgun pleading a complaint in which each successive count incorporated by reference both the factual and legal allegations of the previous counts); Thornton v. City of Macon, 132 F.3d 1395, 1396 n.1 (11th Cir. 1998) (describing as a "quintessential shotgun pleading" a two count complaint where the second count "incorporated all of the preceding allegations of the complaint, including those of Count One"); Johnson v. City of Fort Lauderdale, 126 F.3d 1372, 1376 n.4 (11th Cir. 1997) (finding that a complaint was a shotgun pleading where "each of the complaint's nine counts incorporates all of the factual allegations of earlier counts"); Anderson, 77 F.3d at 366 (describing a complaint as a shotgun pleading where "each count also adopts the allegations of all preceding counts").

[12] See, e.g., Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (finding a shotgun pleading where "a reader of the complaint must speculate as to which factual allegations pertain to which count"); Cramer, 117 F.3d at 1261 (describing the complaint at issue as "a rambling 'shotgun' pleading that is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these appellants are claiming"); Ebrahimi v. City of Huntsville Bd. of Educ., 114 F.3d 162, 164 (11th Cir. 1997) (describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" as a "prototypical 'shotgun complaint'"); Anderson, 77 F.3d at 366 (complaint was "perfect example of 'shotgun' pleading in that it [was] virtually impossible to know which allegations of fact [were] intended to support which claim(s) for relief") (citation omitted); Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla., 63 F.3d 1030, 1046 n.51 (11th Cir. 1995) (characterizing the complaint at issue as "a quintessential shotgun pleading, replete with vague and cursory allegations"); Pelletier v. Zweifel, 921 F.2d 1465, 1518 (11th Cir. 1991) ("[Plaintiff's complaints] are quintessential 'shotgun' pleadings, replete with factual allegations that could not possibly be material to any of the causes of actions they assert.").

[13] See, e.g., Davis, 516 F.3d at 979–80 (describing a complaint with "untold causes of action, all bunched together in one count" as "a model 'shotgun' pleading"); Bickerstaff Clay Prods. Co. v. Harris Cnty., 89 F.3d 1481, 1485 n.4 (11th Cir. 1996) ("The complaint is a typical

15

and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which defendant(s) are responsible for which acts or omissions, or which of the defendant(s) the claim is brought against.[14]  The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.[15]

---

shotgun pleading, in that some of the counts present more than one discrete claim for relief."); Cesnik v. Edgewood Baptist Church, 88 F.3d 902, 905 (11th Cir. 1996) (characterizing as a shotgun pleading a complaint that "was framed in complete disregard of the principle that separate, discrete causes of action should be plead in separate counts"); Novak v. Cobb Cnty. Kennestone Hosp. Auth., 74 F.3d 1173, 1175 & n.5 (11th Cir. 1996) (referring to a complaint that pleaded multiple causes of action in a single count as "a quintessential 'shotgun pleading'"); Cole v. United States, 846 F.2d 1290, 1293 (11th Cir. 1988) (labeling as a shotgun pleading a complaint that set forth, in one count, "every act, [regardless of which defendant committed the act], which, in the pleader's mind, may have had a causal relationship to the [injury]").  We have indicated that this type of shotgun pleading likely runs afoul of Rule 10(b).  See Anderson, 77 F.3d at 366 (finding that failure to "present each claim for relief in a separate count, as required by Rule 10(b)," constitutes shotgun pleading).

[14] See, e.g., Magluta, 256 F.3d at 1284 ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."); Ebrahimi, 114 F.3d at 164 (describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" as a "prototypical 'shotgun complaint'").  But see Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000) ("The fact that defendants are accused collectively does not render the complaint deficient.  The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.").

[15] See Sledge v. Goodyear Dunlop Tires N. Am., Ltd., 275 F.3d 1014, 1018 n.8 (11th Cir. 2001) ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a [responsive] pleading constitutes shotgun pleading."); see also Boatman v. Town of Oakland, Fla., 76 F.3d 341, 343 n.6 (11th Cir. 1996) (characterizing as a "'shotgun' pleading" a complaint that failed to place a defendant on notice of what the claim was and the grounds upon which it rested).

16

3.

The district court dismissed Weiland's § 1983 claims against Johnson and Fleming, which were contained in counts one and three of the complaint, because those counts: (1) incorporated "all of the factual allegations contained in paragraphs 1 through 49 inclusive"; and (2) failed "to identify which allegations are relevant to the elements of which legal theories" and "which constitutional amendments govern which counts." The court dismissed those claims even though it was able to determine from the complaint that Weiland had stated a claim for relief against the two deputies under the Fourth Amendment and for conspiracy to violate his constitutional rights. Its reasoning for dismissing with prejudice claims that it could discern from the complaint was that it had given Weiland an opportunity to replead his complaint, and his amended pleadings "duplicate[d] the violations of Rule 8(a)(2) and 10(b) which formed the basis of the [c]ourt's [earlier] dismissal of th[o]se counts."

Weiland's re-alleging of paragraphs 1 through 49 at the beginning of each count looks, at first glance, like the most common type of shotgun pleading.[16] But it is not. As we have already discussed, this Court has condemned the incorporation of preceding paragraphs where a complaint "contains several counts,

---

[16] The district court rejected the defendants' argument that the counts alleging Weiland's state law claims violated Rule 10(b) even though all three of those counts contain the identical language re-alleging paragraphs 1–49 that his § 1983 counts do. The court stated that the state law claim counts "provide notice as to the charges, the allegations, and the cause of action which they fall within," but it did not explain why the same was not true of the § 1983 claim counts.

17

each one incorporating by reference the allegations of its predecessors [i.e., predecessor counts], leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, 305 F.3d at 1295; see also Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (identifying a complaint as a shotgun pleading where "[e]ach count incorporates by reference the allegations made in a section entitled 'General Factual Allegations' — which comprise[d] 146 numbered paragraphs — while also incorporating the allegations of any count or counts that precede[d] it.") (emphasis added).   What we have here is different.  The allegations of each count are not rolled into every successive count on down the line.

More importantly, this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count.  This may explain why the defendants did not move for a more definite statement under Federal Rule of Civil Procedure 12(e) or otherwise assert that they were having difficulty knowing what they were alleged to have done and why they were liable for doing it.  And it may also explain why the district court could and did understand the claims that were stated in these two counts.

Count one claims that Fleming and Johnson,[17] "while acting under color of law," violated Weiland's constitutional rights by "using excessive and unreasonable force."  The task of figuring out which of the 49 paragraphs that are incorporated into count one are relevant to a claim of "excessive and unreasonable force" is hardly a task at all.  It is greatly simplified by the organization of the 49 paragraphs of factual allegations into three subsections, the first of which is titled "Facts Surrounding the Shooting of [Christopher Weiland]" and consists of 23 paragraphs spanning just over six pages.  This subsection is over-inclusive for purposes of an excessive force claim (the final 10 paragraphs are about the role the deputies played in the alleged coverup, which is not an element of excessive force).  But the first 13 paragraphs clearly and concisely describe the events of April 6, 2007, from the 911 call to the shooting, tasering, beating, and arrest of Weiland.  Count one is not a model of efficiency or specificity, but it does adequately put Fleming and Johnson on notice of the specific claims against them and the factual allegations that support those claims.

Count three — the conspiracy count — restates in paragraphs 69 through 74 the facts relevant to a conspiracy claim against Fleming and Johnson, including the allegations that Fleming and Johnson agreed to "fabricate an elaborate story" that

---

[17] As we have mentioned, one type of shotgun pleading fails to identify the defendant or defendants against whom each claim is brought.  See, e.g., Magluta, 256 F.3d at 1284.  Weiland's third amended complaint did not do that.  Count one, for example, is titled "42 U.S.C., Sections 1983 and 1988 against Fleming [and] Johnson . . . individually."

would justify their use of deadly force and, in furtherance of that agreement, falsified police reports and tampered with evidence. According to count three, the deputies' conspiracy resulted in the deprivation of multiple constitutional rights. As we will explain, only one of those alleged deprivations yields a cognizable claim, but for present purposes, it is enough to say that count three, like count one, gives Fleming and Johnson adequate notice of the claims against them and the factual allegations that support those claims.

4.

Finally, we disagree with the district court's characterization of Weiland's complaint as "fail[ing] to identify . . . which constitutional amendments govern which counts." The complaint does identify the constitutional amendment or amendments that govern each count.[18] The fact that it includes constitutional amendments under which he is not entitled to relief would be dispositive in a Rule

---

[18] Count one states that "[Johnson's] and [Fleming's] acts and omissions in using excessive and unreasonable force . . . violated [Weiland's] Fourth, Fifth, and Eighth Amendment rights, applicable to the States through the Fourteenth Amendment." Count three states that Fleming and Johnson's conspiracy violated "[Weiland's] constitutional rights under the Fourth and Fifth Amendment, applicable to the States through the Fourteenth Amendment."

A complaint is not always required to contain a separate count for each constitutional provision that the same set of facts is claimed to violate. Rule 10(b) states only that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." It does not state that a contention that one transaction or occurrence violates multiple constitutional provisions must be stated in multiple counts. Multiplicity does not always equate with clarity. A separate count for the Fourth Amendment claim, the Fifth Amendment claim, and the Eighth Amendment claim — all based on the same "transaction or occurrence" of allegedly excessive and unreasonable force — would not "promote clarity" in this case.

12(b)(6) analysis, but it is not dispositive of the separate question of whether the claims in this complaint are so poorly pleaded that they warrant a dismissal under Rules 8(a)(2) and 10(b) regardless of whether they state viable claims. A dismissal under Rules 8(a)(2) and 10(b) is appropriate where "it is <u>virtually impossible</u> to know which allegations of fact are intended to support which claim(s) for relief." <u>Anderson</u>, 77 F.3d at 366 (emphasis added). No such virtual impossibility exists in this case.

5.

For these reasons, we conclude that the district court abused its discretion when it dismissed Weiland's count one and count three claims against Fleming and Johnson on the ground that those counts did not comply with Rules 8(a)(2) and 10(b). In concluding that the court should not have dismissed those two counts, we are not retreating from this circuit's criticism of shotgun pleadings, but instead are deciding that, whatever their faults, these two counts are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted. The district court implicitly recognized as much when it observed in the orders dismissing counts one and three that they actually do state claims upon which relief can be granted. Whether those observations are correct is a question to which we now turn.

21

B.

Deputies Johnson and Fleming did not argue in their motion to dismiss Weiland's third amended complaint, or in their brief to this Court, that they are entitled to qualified immunity. We limit our analysis to whether the allegations in Weiland's complaint are sufficient to state a claim upon which relief can be granted without regard to the qualified immunity defense. Our review is de novo. Saunders v. Duke, 766 F.3d 1262, 1266 (11th Cir. 2014).

1.

We begin with count one, which claims that the deputies used excessive force to seize Weiland. A citizen's Fourth Amendment right to be free from unreasonable searches and seizures includes "the right to be free from the use of excessive force in the course of an arrest."[19] Id. at 1266–67. To determine whether the amount of force used to seize a person is "reasonable" under the Fourth Amendment, courts consider, among other things, "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor,

---

[19] In count one, Weiland alleges that Fleming and Johnson's use of excessive and unreasonable force violated his "Fourth, Fifth, and Eighth Amendment rights, applicable to the States through the Fourteenth Amendment." It is clear, however, that the only constitutional provision under which Weiland could possibly prevail on a claim of excessive force is the Fourth Amendment. See Plumhoff v. Rickard, — U.S. —, 134 S. Ct. 2012, 2020 (2014); accord Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989) ("[A]ll claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest . . . or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").

490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989).  Reasonableness is judged objectively "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.

Count one of Weiland's complaint states a Fourth Amendment claim against both Johnson and Fleming in their individual capacities.  It alleges that when the deputies arrived at the residence, Weiland's father informed them that his son was agitated, had threatened suicide, and might have a gun.  With guns drawn, Fleming and Johnson approached the bedroom without calling out or identifying themselves.  When they encountered Weiland sitting on a bed and "looking down at a shotgun that lay loosely in his lap," Johnson fired two rounds at Weiland, hitting him and knocking him to the floor.  As Weiland lay bleeding and critically injured, Fleming tasered him.  And both officers then "physically beat and assault[ed] [Weiland] before finally handcuffing one of his hands to a dresser."  Though the complaint does not specify what happened to the shotgun on Weiland's lap when he fell off the bed, it does allege that "[a]t no point did [Weiland] ever raise the shotgun from his lap or point it in the direction of the Deputies."

Construing the allegations in the light most favorable to the plaintiff, as we are required to do, count one alleges that Deputy Johnson shot Weiland without warning when he was not posing a threat to the deputies or anyone else; that while he was on the ground bleeding from the gunshot wound and not offering any

23

resistance or threat, Deputy Fleming tasered Weiland; and that while he was on the ground seriously injured by both the shooting and the tasering and not offering any resistance or threat, both deputies beat him without cause. Count one states an excessive force claim upon which relief can be granted against both deputies. Because the district court erred in dismissing count one, we will reverse that part of its judgment.

2.

Count three asserts that Johnson and Fleming, after violating Weiland's Fourth Amendment rights, conspired to cover up those violations. To state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights. See Hadley v. Gutierrez, 526 F.3d 1324, 1332 (11th Cir. 2008). Here is how count three describes the agreement and actions taken in furtherance of it:

> On or about April 6, 2007, after [Weiland] had been shot and Tasered, [Fleming] and [Johnson] . . . entered into an agreement to fabricate an elaborate story about [Weiland] running from them into another room, grabbing a shotgun, sitting in a chair, and then pointing the gun at them as they entered the doorway.
>
> As part of this agreement, [Fleming] and [Johnson] falsely alleged that during the altercation, [Weiland] discharged the shotgun, either at the Deputies or himself.

24

In furtherance of that agreement, [Johnson] took the shotgun from [Weiland]'s residence to an unknown location where it was discharged. It was then returned to the scene.

[Fleming] and [Johnson] agreed to present false police reports documenting their fabricated account of the incident.
As an overt act, [Johnson] physically removed the shotgun from the [Weiland] residence against all police procedure and protocol.

As an overt act, [Fleming] and [Johnson] . . . prepared false incident reports documenting the fabrication.

Those allegations adequately state that there was an agreement between the two deputies to frame Weiland for a crime he did not commit.

Count three goes on to allege that the deputies' agreement, and the actions taken in furtherance of that agreement, resulted in the deprivation of Weiland's constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. It also identifies "unjust incarceration" as the constitutional injury that Weiland suffered as a direct and proximate result of the conspiracy. (Weiland was imprisoned for nearly two years between his arrest and trial, at which point he was acquitted.)

Two of the four constitutional bases for count three are out for obvious reasons. The Fifth Amendment is out because it protects a citizen's rights against infringement by the federal government, not by state government. See Riley v.

Camp, 130 F.3d 958, 972 n.19 (11th Cir. 1997); Buxton v. Plant City, 871 F.2d 1037, 1041 (11th Cir. 1989).  And the Eighth Amendment is out because it applies only after a citizen has been convicted of a crime, and Weiland never was.  See United States v. Myers, 972 F.2d 1566, 1571 (11th Cir. 1992).

We are left, then, with the Fourth Amendment and the Fourteenth Amendment.  Weiland claims that he was detained improperly and prosecuted for charges based on evidence fabricated by the deputies and lies contained in their police reports.  "Our Court has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003).  Additionally, the specific injury identified by Weiland — i.e., unjust incarceration — is a deprivation of liberty redressable under the Due Process Clause of the Fourteenth Amendment. See Campbell v. Johnson, 586 F.3d 835, 840 (11th Cir. 2009).  Because count three specifies a causal connection between the alleged cover up and the specific deprivation of Weiland's constitutional rights, it sufficiently alleges "an underlying actual denial of his constitutional rights," which is required to state a claim for conspiracy under § 1983.  Hadley, 526 F.3d at 1332 (quotation marks omitted). For these reasons, we will reverse the part of the district court's judgment dismissing count three as to Deputy Johnson and Deputy Fleming.

C.

We now turn to the question of whether Weiland's complaint states a claim upon which relief can be granted against the Palm Beach Sheriff's Office. Although the Supreme Court has held that local government may be subject to liability under § 1983, a plaintiff cannot rely upon the doctrine of respondeat superior to hold the government liable. Monell v. Dep't of Social Servs., 436 U.S. 658, 693–94, 98 S. Ct. 2018, 2037 (1978). He must instead establish that the government unit has a "policy or custom" that caused the injury. City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989).

1.

In counts two and four, Weiland claims that the Sheriff's Office maintained two unconstitutional policies: (1) a policy of not training its deputies in the appropriate use of force when seizing mentally ill citizens for transportation to mental health facilities (count two); and (2) a policy of using internal affairs investigations to cover up the use of excessive force against mentally ill citizens (count four). We take the two claims in that order.

"In limited circumstances, a local government's decision not to train certain employees . . . to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, — U.S. —, 131 S. Ct. 1350, 1359 (2011). But "[a] pattern of similar constitutional violations

by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id. at 1359–60 (quotation marks omitted).[20]  Count two does not allege a pattern of similar constitutional violations by untrained employees.  Although it contains the conclusory allegation that the Sheriff's Office was "on notice" of the need to "promulgate, implement, and/or oversee" policies pertaining to the "use of force" appropriate for "the seizure of mentally ill persons and their transportation to mental health facilities," no facts are alleged to support that conclusion.[21]  Instead, it is clear that the claim outlined in count two arises from a single incident and the actions of two deputies.

---

[20] See also Gold v. City of Miami, 151 F.3d 1346, 1351 (11th Cir. 1998) ("This Court repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise."); Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990) (concluding that a sheriff's department was not liable for a deputy's act where "no evidence of a history of widespread prior abuse . . . put the [department] on notice of the need for improved training or supervision"); Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987) (holding that the city did not have adequate notice of past police misconduct even where there had been ten citizen complaints about the implicated officer because the plaintiff "never demonstrated that past complaints . . . had any merit").

[21] Weiland's assertions that he had been "Baker Acted" by deputies on at least two earlier occasions and that the Sheriff's Office was "familiar with [Weiland's] history of bipolar disorder" are not enough, especially absent allegations that the prior Baker Act calls resulted in similar violations (or, for that matter, any violations) of Weiland's constitutional rights or that the Sheriff's Office was aware of those violations and therefore "on notice" of a need to train and supervise deputies in this particular area.

During oral argument, Weiland's attorney directed us to paragraph 33 of the complaint, which alleges that "[n]umerous police shootings of people with mental illnesses, both in Palm Beach County and nationally, in addition to thousands of contacts between [the Sheriff's Office] Deputies and people with mental illnesses, have placed [the Sheriff's Office] on notice that there is a need for specialized training of Deputies to deal with people with mental illnesses."  Those allegations are not enough.  Mere "contacts" between deputies and mentally ill citizens are insufficient to put the Sheriff's Office on notice of the need for training, especially where "the

28

Our analysis is not altered by the fact that evidence of previous incidents is not required to establish city policy if the need to train and supervise in a particular area is "so obvious" that liability attaches for a single incident. See Gold, 151 F.3d at 1352. The complaint does not allege that the need for specialized training in the constitutional restrictions on the use of force when dealing with mentally ill citizens is "so obvious" that the failure to provide such training amounts to deliberate indifference. The district court's dismissal of count two is correct.

As for count four, the complaint does not plausibly allege that the Sheriff's Office has had a policy of using internal affairs investigations to cover up the use of excessive force against the mentally ill. The only facts that it alleges in support of that claim are about Deputies Fleming and Johnson's own conduct after the shooting coupled with the naked assertion that the internal affairs investigation into the administrative complaint that Weiland filed "sought [only] to uncover misconduct on the part of [Weiland] and his father." See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) ("[A] complaint [does not] suffice if it

failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 490 (11th Cir. 1997) (quotation marks omitted). Any alleged shootings outside of the Sheriff Office's jurisdiction do not establish a pattern of similar constitutional violations by employees of the Sheriff's Office that would put it on notice that its own training is inadequate. Finally, to the extent that police shootings of the mentally ill have occurred in Palm Beach County, Weiland must allege, with some "factual enhancement," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966 (2007), that those shootings gave rise to "similar constitutional violations," Connick, 131 S. Ct. at 1360 (noting that previous Brady violations by prosecutors were insufficient to put the district attorney's office on notice of the need to train because "those incidents [were] not similar to the violation at issue"). He has not done so.

29

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966 (2007)).  The district court's dismissal of count four is correct.

2.

The complaint attempts to state one other § 1983 claim against the Sheriff's Office.  Count three alleges that the Sheriff's Office conspired with Johnson and Fleming to conceal the deprivation of Weiland's constitutional rights.  While this Court has never had occasion to hold that a conspiracy claim against a municipality must include the existence of a policy or custom underlying the conspiracy, that has to be so.   See Monell, 436 U.S. at 691, 98 S. Ct. at 2036 ("[T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.") (emphasis added).  Neither count three nor any other part of the complaint contains sufficient, non-conclusory allegations that there is an official "policy or custom" of covering up constitutional deprivations like the ones that Weiland claims to have suffered.  The district court's dismissal of count three insofar as it is against the Sheriff's Office is correct.

30

3.

The only remaining claims against the Sheriff's Office that are before us in this appeal are the state law claims for intentional infliction of emotional distress (count six) and malicious prosecution (count seven). The district court ruled that both claims were barred by sovereign immunity. Florida courts have long recognized that Fla. Stat. § 768.28(9)(a) — which provides that the State and its subdivisions "shall not be liable in tort for the acts or omissions of an officer, employee, or agent . . . committed . . . in a manner exhibiting wanton and willful disregard of human rights, safety, or property" — bars claims for both intentional infliction of emotional distress and malicious prosecution. See Williams v. City of Minneola, 619 So. 2d 983, 986 (Fla. 5th DCA 1993) (compiling Florida cases that use "reckless conduct" and "willful and wanton conduct" interchangeably and holding that the reckless conduct element of an intentional infliction of emotional distress claim "would at least constitute willful and wanton conduct" under § 768.28(9)(a)); Johnson v. State Dep't of Health & Rehab. Servs., 695 So. 2d 927, 930 (Fla. 2d DCA 1997) (citing several cases for the proposition that "[s]ection 768.28(9)(a) bars an action for malicious prosecution against the state or its subdivisions arising from the malicious acts of their employees"). The district court's dismissal of counts six and seven against the Sheriff's Office is correct.

31

III.

We REVERSE the part of the district court's judgment dismissing count one of Weiland's third amended complaint.  We also REVERSE the part of the judgment dismissing count three as to Fleming and Johnson.  However, we AFFIRM the dismissal of count three as to the Sheriff's Office and the dismissal of counts two, four, six, and seven in their entirety.

The district court's discretionary remand of count five to state court was predicated on its belief that "[no] viable federal claims" remained.  Because that has now changed, we VACATE the part of the district court's order that remanded count five to state court.  And we REMAND this case to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; REMANDED.**