[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-14133

Non-Argument Calendar

_____

CARLOS ALONSO,
individually, and as guardian for his son,
Angie Alonso,

Plaintiff-Appellant,

FE MOREJON,
individually,

Plaintiff,

*versus*

THE PUBLIC HEALTH TRUST OF MIAMI-DADE COUNTY,
d.b.a. Jackson Memorial Hospital,

2                    Opinion of the Court                    22-14133

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cv-24045-DPG

_____

Before LAGOA, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Carlos Alonso and his wife, Fé Morejón, are the parents of Angie Alonso, an adult with mental and physical disabilities.[1] Carlos is also Angie's guardian. Carlos and Morejón took Angie to the defendant—Public Health Trust of Miami-Dade County doing business as Jackson Memorial Hospital—for medical care. Over the course of their interactions, they allege the defendant discriminated against them based on Angie's disability in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C § 12131-12134, and Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794. They appeal from the district court's dismissal of their *pro se* second amended complaint as a shotgun pleading and alternatively for failure to state a claim. After careful review, we affirm the dismissal.

---

[1] For ease of reference, we refer to Carlos and Angie Alonso by their first names.

## I. BACKGROUND

Carlos, as the sole plaintiff, filed a *pro se* complaint in 2018, and in response to the defendant's first motion to dismiss, he filed his first amended complaint in April 2019 with the district court's permission.  Carlos's 26-page, 168-paragraph first amended complaint described three encounters with the defendant: (1) a phone call on May 3, 2016, to set up a doctor's appointment, (2) an emergency room visit on October 3, 2016; and (3) the scheduled appointment on November 4, 2016.  Generally, Carlos was dissatisfied with the treatment Angie received during the October and November visits, and his complaint asserted counts for discrimination and retaliation under the ADA and RA, breach of contract, and promissory estoppel.

The defendant renewed its motion to dismiss, arguing the first amended complaint was a shotgun pleading and failed to state a claim.

At a status conference in June 2019, the district court stated it would dismiss the first amended complaint as a shotgun filing because Carlos had reincorporated his prior allegations in each count.  The court also asked Carlos how he knew he had difficulty getting Angie an appointment because of his disability, rather than the hospital being busy, and Carlos said the defendant's staff treated his son "like a normal person," rather than giving him an earlier appointment as "a reasonable accommodation . . . for a disabled person."  The court explained it would permit Carlos to file a second amended complaint and warned Carlos that, based on the

caselaw cited by the defendant, his complaint sounded like medical malpractice, not an ADA claim. It cautioned Carlos that he "need[ed] to look and see exactly what [he] ha[s] to prove under the ADA, and if it doesn't fit, [he is] going to have a problem later."

Shortly after, the district court entered its order dismissing the complaint as a shotgun pleading with leave to file a second amended complaint on or before August 16. On August 16, Carlos filed a document titled "Motion for Leave to File the Authorized Second Amended Complaint." He explained this was in compliance with the June 18 order authorizing the amendment and that he was adding his wife and son as plaintiffs.

Carlos attached a 45-page, 189-paragraph second amended complaint as an exhibit. In it, Carlos, "individually and as guardian for his son," and Morejón (collectively, plaintiffs), proceeding *pro se*, asserted the defendant discriminated and retaliated against Angie "for no other reason than his disability, when they refused to make reasonable modifications in policies, practices, or procedures," and that, as a result, Angie was denied the benefits and services of a public entity. They further asserted the defendant's staff acted with discriminatory and retaliatory intent or with deliberate indifference to the federally protected rights of Angie and his parents.

According to the second amended complaint, Angie needed a primary care physician to evaluate him every 60 days to continue receiving state benefits for individuals with disabilities. In search of a new doctor for Angie, Carlos called the defendant on May 3,

2016, requesting an expedited appointment in light of Angie's disabilities. Unable to persuade the hospital to make an earlier appointment, Carlos scheduled an appointment for Angie in November with Dr. Deborah Carlone.

On October 3, 2016, Carlos and Morejón took Angie to the defendant's emergency room because Angie was complaining of pain. When they arrived, Carlos requested "some reasonable accommodations" to speed up treatment, provide privacy, and make Angie more comfortable. These accommodations, including expedited service and a private room, were allegedly either refused or performed inadequately.

At the scheduled appointment on November 4, the plaintiffs again allegedly suffered from delays, inattention, and a lack of respect by the defendant's staff. According to the plaintiffs, a nurse found Angie's blood pressure was high, and Dr. Carlone briefly checked in then left, promising to return immediately. After 45 minutes of waiting, Carlos complained at the front desk, and he asked Dr. Carlone's supervisor to appoint another doctor to see Angie. The supervisor refused, and when Dr. Carlone eventually returned, she asked "in a rude way" about Angie's personal information, which the plaintiffs provided and Dr. Carlone entered in her computer. Carlos explained Angie's need for a new primary care doctor and asked for referrals to other doctors to address Angie's ongoing symptoms. Dr. Carlone allegedly started arguing with Carlos and "putting [up] obstacles to giv[ing] Angie medical attention." She allegedly "tried to pressure Carlos to take Angie

back to his former doctor" and rejected Carlos's arguments that she should attend Angie as a new patient. She then "became very upset," "erased all the information about Angie in her computer," and left the room. The plaintiffs requested another meeting with Dr. Carlone's supervisor but left the hospital after waiting for another 25 minutes. Despite being at the hospital for more than two hours, Angie was not cared for by a doctor.

Carlos filed a complaint against Dr. Carlone and her supervisor and attempted to meet with the hospital's director. At a meeting with the hospital's Chief of Service, Diamela Corrales, a few days later, Carlos told Corrales about his complaints. In December, Angie's parents took him to another hospital where he was eventually diagnosed with a urinary tract infection, kidney stones, and Spastic Quadriplegic Cerebral Palsy. After receiving no response on his complaint with the defendant, Carlos obtained Angie's medical records from the defendant and allegedly discovered Dr. Carlone had included false information and inaccurately billed for services.

On August 30, the defendant moved to dismiss the second amended complaint for failure to state a claim, but it no longer argued the complaint was a shotgun pleading.

A few days later, the district court granted the plaintiffs' motion for leave to file the second amended complaint, and the complaint was re-filed in a separate docket entry.

The plaintiffs responded to the motion to dismiss. They then moved a third time for leave to amend, which was opposed,

and the district court denied leave for failure to confer with the defendant's counsel. Undeterred, the plaintiffs filed a fourth motion to amend, which the defendants also opposed.

Nearly three years passed without court action. Then, on October 14, 2022, the district court denied leave to amend for failure to show good cause to amend. It also scheduled a status conference. The plaintiffs asked for reconsideration of the denial of leave to amend and to stay the case for 90 days.

On November 15, 2022, the district court cancelled the status conference. The court then dismissed the second amended complaint with prejudice as to the ADA claims—Counts 1 through 4—and without prejudice as to the two remaining state-law claims—Counts 5 and 6. The court found the complaint should be dismissed as a shotgun pleading because Counts 2 through 4 "incorporate by reference preceding paragraphs, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions" and make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." The court alternatively found Counts 1 through 4 seem to allege the defendant "did not immediately give Plaintiffs' disabled child a medical appointment and that the hospital provided their child with inadequate medical care." It "agree[d] with Defendant that such claims do not fall under the ADA or RA" and were "more suited as medical malpractice claims."

The plaintiffs appealed from the dismissal and retained counsel on appeal.

## II. DISCUSSION

The plaintiffs raise a few arguments on appeal: (1) the district court technically erred by granting a premature motion to dismiss, (2) the operative complaint was not a shotgun pleading and stated an ADA claim, and (3) they should have been allowed to replead. We address these issues in turn.

### A. Motion on the Operative Complaint

The plaintiffs' first argument is unpersuasive.  They assert the district court's order granting leave to amend was not entered, and the second amended complaint was not filed, until *after* the defendant moved to dismiss on August 30.  As a result, they argue the defendant's motion to dismiss was prematurely directed toward the "preview" version of the second amended complaint attached as an exhibit to their August 16 motion for leave to amend, and the court should not have ruled on the motion to dismiss.

While an amended pleading generally supersedes any prior pleadings, *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007), the district court already granted Carlos leave to amend when it dismissed the first amended complaint.  Carlos did not need to ask again for permission to amend, and the motion to amend with the attached complaint was filed within the time permitted for amendment.  Moreover, the complaint attached as an exhibit is substantively identical to the second amended complaint filed on September 6.  The plaintiffs assert "[a]lmost 200 revisions distinguish the [second amended complaint] (according [to] an Adobe Acrobat comparison report)" from the "preview version to

be filed upon authorization." But the only differences are the signature block date, stamps by the clerk's office, and scanning artifacts. Under the circumstances, the district court did not err by considering the motion to dismiss because compliance with Local Rule 15.1 was an administrative convenience, not a legally significant act. *See* S.D. Fla. 15.1 (requiring an amended pleading to be separately filed).

### B. Dismissal as a Shotgun Pleading

Next, the district court gave alternative grounds to dismiss the second amended complaint: shotgun pleading and the failure to state an ADA claim. For the plaintiffs to succeed, we need to find the district court erred in both respects. We may also affirm the district court on any ground supported by the record. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1210 (11th Cir. 2020).

We review the district court's dismissal of a complaint as a shotgun pleading for abuse of discretion. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). We have identified four rough types of shotgun pleadings, and the unifying characteristic "is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1321-23.

The district court found the plaintiffs' second amended complaint fell into the most common category: pleading "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before

and the last count to be a combination of the entire complaint." *Id.* at 1321. On appeal, the defendant argues the second most common type of shotgun pleading is more applicable—that is, the complaint was "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *See id.* at 1322.

The plaintiffs[2] contend the district court abused its discretion because their ADA claim was pled to give fair notice to the defendant. While the second amended complaint improved on the mass reincorporation of the first amended complaint, we cannot say the district court abused its discretion in dismissing it as a shotgun pleading. This was Carlos's third attempt to plead his ADA and RA

---

[2] In the second amended complaint, Carlos, proceeding *pro se*, purported to bring claims on behalf of Angie as his guardian. As Angie's guardian, Carlos would have had standing to sue on Angie's behalf. *See* Fed. R. Civ. P. 17(a)(1)(C), (c) (allowing guardians to sue on behalf of individuals who are incompetent). However, as a non-attorney, Carlos was not allowed to represent Angie while proceeding *pro se*. *See Devine v. Indian River Cty. Sch. Bd.*, 121 F.3d 576, 581-82 (11th Cir. 1997) (holding that Rule 17(c) did not confer a non-attorney father the right to proceed *pro se* on his minor son's behalf), *overruled in part on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). Although 28 U.S.C. § 1654 grants parties the ability to "plead and conduct their own cases personally or by counsel," it does not grant the ability to plead or conduct someone else's case. *See id.* at 581.

The district court did not address Angie specifically, so it is not entirely clear whether it considered Angie to be a proper plaintiff. We clarify that Carlos could not represent Angie while proceeding *pro se*, so any claims purportedly brought on Angie's behalf were not properly before the court and could not have been dismissed with prejudice. *See id.* at 581-82. We otherwise express no opinion about the viability of any claims with respect to Angie.

claims, and it still contains immaterial facts and conclusory legal assertions masked as facts. Although we liberally construe *pro se* pleadings and hold them to less stringent standards than we apply to formal pleadings that lawyers draft, "we cannot act as *de facto* counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care*, LLC, 981 F.3d 903, 911 (11th Cir. 2020).

### C. Denial of Leave to Amend

Finally, the plaintiffs concede their complaint "could be improved upon," but they contend they should have been permitted to replead any portions of their complaint the district court found inadequate.

We review a district court's decision to deny leave to amend for abuse of discretion although that discretion is "severely restricted" by Civil Rule 15. *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). Ordinarily, if a more carefully drafted complaint might state a viable claim, a district court abuses its discretion if it does not provide a *pro se* plaintiff with at least one opportunity for amendment before dismissing the action with prejudice. *See id.* A court need not grant leave to amend when "a more carefully drafted complaint could not state a claim." *Id.*

The district court gave Carlos two opportunities to file amended complaints, and it was not required to provide a third. Although the court did not dismiss the first amended complaint on the merits, it directed Carlos at the June 2019 status conference to carefully consider what he needed to plead for an ADA claim. However, the district court still found the second amended

12                    Opinion of the Court                    22-14133

complaint failed to state an ADA claim. *See Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 834 (11th Cir. 2017) ("The ADA and RA focus not on quality of medical care or the ultimate treatment outcomes, but on the equal opportunity to *participate* in obtaining and utilizing services." (citing 42 U.S.C. § 12182(b)(1)(A)(ii); 29 U.S.C. § 794(a); 45 C.F.R. § 84.4(b); 45 C.F.R. § 84.52(d)(1)). Under the circumstances, the district court did not abuse its discretion in denying leave to file a third amended complaint.[3]

### III. CONCLUSION

We **AFFIRM** the dismissal of the second amended complaint.

---

[3] In their last motion to amend, the plaintiffs specifically sought to add discrimination and retaliation claims under the RA on Angie's behalf. But, again, Carlos and Morejón cannot proceed *pro se* on Angie's behalf, so they were not entitled to add those claims. *See Devine*, 121 F.3d at 581-82. Moreover, Carlos and Morejón have not explained how they could have pled an ADA or RA claim on their own behalf. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133-34 (11th Cir. 2019) (discussing the elements of ADA and RA claims). We would thus affirm the dismissal of Counts 1 through 4 with respect to them for failure to state a claim, as well. *See Cisneros*, 972 F.3d at 1210; *Woldeab*, 885 F.3d at 1291. After dismissing the federal claims, the district court had discretion to decline to exercise supplemental jurisdiction over the remaining state-law claims, and we would affirm the dismissal of Counts 5 and 6 without prejudice for that reason, too. *See* 28 U.S.C. § 1367(c)(3).