IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 NORTHERN DIVISION 

ALAN SEALS, ) 
 ) 
 Plaintiff, ) 
 ) 
 v. ) 
 ) 
DR. STEVEN LEATH, et al., ) 
 ) 
 Defendants. ) CASE NO. 3:19-cv-468-ALB-JTA 
 ) 
 ) 
 ) 

 MEMORANDUM OPINION AND ORDER 
 This matter comes before the Court on a motion by Dr. Steven Leath and 
various other former or current officials of Auburn University (“Defendants”), to 
dismiss the allegations of Alan Seals (“Plaintiff”), Professor of Economics at Auburn 
University. Plaintiff alleges First Amendment retaliation in violation of 42 U.S.C 
§1983, a federal law conspiracy to commit First Amendment retaliation in violation 
of 42 U.S.C. § 1985, and a state law conspiracy to commit First Amendment 
retaliation. Defendants have filed a motion to dismiss all three counts. See Doc. 16. 
Upon consideration, the motion is GRANTED in part and DENIED in part. 
 BACKGROUND 
 The following facts are taken from the complaint and are accepted as true for 

present purposes. 
 Six years ago, Professors at Auburn University became aware that an 
unusually high percentage of student-athletes were clustered in the same major: 

Public Administration. Although Professors voted overwhelmingly to end the 
major, believing it to be of little academic value, Defendant Boosinger, the Provost, 
overrode their decision and kept the program open. It eventually came to light that 
the Auburn University athletic department had offered to subsidize the Public 

Administration major by paying its staff. Articles were published about these events 
on December 5, 2014, August 28, 2015 and November 1, 2015. Seals served as a 
source for two of them. 

 Seals’ frustration with the actions of Auburn’s leadership led him to create a 
collage of University officials linking arms with Joseph Stalin. He affixed this 
collage to the door of his University office. On October 18, 2016, Defendant Aistrup 

emailed Seals, requesting the removal of the collage and ostensibly attempting to 
intimidate him by inviting Seals to his office for a better picture. On October 24, in 
front of at least one witness, Defendant Aistrup approached Seals prior to a meeting 

and said “may the wings of corruption carry you far.” This conduct was brought to 
the attention of University President Gogue on January 11, 2017. 
 Between January and April of 2017, Seals was intimately involved in a 
campaign by senior members of the Auburn economics faculty to form a new school 

of economics and become organizationally independent from the College of Liberal 
Arts within the Auburn University organization. The proposal was successful, and, 
on April 11, the economics department became operationally independent from the 

College of Liberal Arts. On June 19, Defendant Leath took over from Gogue as the 
President of Auburn University. On July 5, Defendant Boosinger, whose favorable 
treatment of Public Administration and the athletic department Seals had taken part 
in publicizing, purported to unilaterally reverse the organizational shift and 

reabsorbed the economics department into the College of Liberal Arts. 
 On February 16, 2018 another article covering the athletic department’s 

Public Administration scandal was published and again Seals served as a source. By 
late March, Seals was alarmed at the lack of support being provided to the economics 
faculty at Auburn and on March 22 he sent Defendant Leath an email saying as 
much. After agreeing to a meeting, Defendant Leath cancelled and refused to meet 

with Plaintiff throughout the Spring of 2018. Then, on May 25, 2018, Defendant 
Aistrup summarily removed Seals and Stern, another prominent member of the 
economics faculty who had also served as a source for various articles, from the 

positions of Graduate Program Officer and department chair, respectively. 
 On May 31, 2018, Defendant Aistrup called the economic department’s 
secretary, Jennifer Bruno, and instructed her to advise all graduate students to avoid 

speaking with Seals. Throughout the summer of 2018, actions taken against Seals 
intensified. Defendant Kim, newly appointed interim chair of the economics 
department, formed a new graduate program committee without telling Seals or any 

of the Professors who had expressed support for him and reduced the hours of 
teaching assistant support for Seals’ undergraduate econometrics class. On August 
31, Seals filed a grievance against Defendant Aistrup. 

 In an October 1 meeting with Seals, Defendant Hardgrave admitted that the 
timing of his removal as Graduate Program Officer had been bad but insisted he 
could do nothing as he was not involved at the departmental level. At an economics 

department faculty meeting on November 7, Seals confronted Defendant Kim about 
various violations of university policy whereupon Defendant Kim responded that he 
acted within his department precisely as Defendant Hardgrave instructed him to. 
Defendant Kim claimed to have emails proving this. 

 In April of 2019, Seals received his performance reviews from the preceding 
year which listed him as a Graduate Program Officer until May 2018 and rated his 

performance as “Exceeds Expectations.” While Seals remains employed as an 
economics professor at Auburn University, he did not receive $20,000 in summer 
salary that he would have received had he not been removed from his internal 
position. Secretary Jennifer Bruno was formally reprimanded and involuntarily 
transferred out of the economics department because of her attempts to inform Seals 

of the actions being taken against him. 
 STANDARD 

 When considering a motion to dismiss, the court accepts all facts alleged in 
the complaint as true and draws all reasonable inferences in the plaintiff’s favor. 
Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010). There are two 

questions a court must answer before dismissing a complaint. First, the court must 
ask whether there are allegations that are no more than conclusions. If there are, 
they are discarded. Second, the court must ask whether there are any remaining 

factual allegations which, if true, could plausibly give rise to a claim for relief. If 
there are none, the complaint will be dismissed. Bell Atlantic Corp. v. Twombly, 550 
U.S. 544, 570 (2007). 

 DISCUSSION 
 Plaintiff’s targets in this litigation are Dr. Steven Leath, who served as the 

President of Auburn University between 2017 and 2019, Dr. Bill Hardgrave, who is 
the Provost of Auburn University, Dr. Joseph Aistrup, who is the Dean of the Auburn 
University College of Liberal Arts, Dr. Hyeongwoo Kim, chair of the economics 

department at Auburn University, and Dr. Tim Boosinger, who served formerly as 
the Provost of Auburn University. Plaintiff alleges in Count One that all defendants 
retaliated against him for exercising his First Amendment rights in violation of 42 

U.S.C §1983, in Count Two that all Defendants conspired to retaliate against him 
for exercising his First Amendment rights in violation of 42 U.S.C. §1985, and in 
Count Three that all Defendants conspired to retaliate against him for exercising his 

First Amendment rights in violation of Alabama law. 
Count One: The First Amendment Retaliation Claim Should Not Be Dismissed. 

 The Eleventh Circuit standard for First Amendment retaliation claims under 
§1983 was articulated in Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005). 
The plaintiff must establish that his speech was constitutionally protected, that the 

retaliatory conduct adversely affected the protected speech, and that there is a causal 
connection between the retaliatory actions and the adverse effect on speech. See id. 
To show that the conduct has adversely affected the speech, the plaintiff must show 
that the retaliatory conduct would likely deter a person of ordinary firmness from 

the exercise of his First Amendment rights. See id. 
 This claim is brought against all Defendants in both their individual and 

official capacities and the relief sought from the official capacity claim is purely 
prospective and injunctive. Defendants make three arguments that the claim should 
be dismissed. First, Plaintiff relies inappropriately on acts against third parties in 
violation of Rule 12(f) of the Federal Rules of Civil Procedure. Second, Plaintiff’s 
complaint does not satisfy the rudiments of a pleading under the Supreme Court 

holdings in Twombly-Iqbal. Third, the complaint is an impermissible shotgun 
pleading. In response, Plaintiff argues that the actions against others are material to 
his factual narrative, that he has pled adequate facts to support his claims under 
Twombly-Iqbal, and that the re-alleging of all pled facts is relevant to each count.1 

 A. Plaintiff’s factual contentions relating to others are not grounds for 
 dismissal 

 Although Plaintiff has clarified that his factual contentions regarding Dr. Stern 
are illustrative in nature and show the overall pattern of conspiracy, Defendant 

maintains that consideration of these factual contentions is not appropriate because 
Plaintiff fails to show a connection to the acts against him. The Court agrees with 
Defendants that Plaintiff may not sue for a violation of another’s rights and further 
that to the extent pled facts are irrelevant to Plaintiff’s claims, they will not be 

considered by this Court. However, the factual contentions regarding Stern are 
sufficiently connected to Plaintiff for him to use. 

1 Defendants make these same three arguments for a dismissal due to insufficiency against all 
three counts in the complaint. These claims of insufficiency are dealt with at length here because 
it is the only basis for dismissal of the first count that has been argued by Defendants. 
 Defendants argue that Plaintiff “fails to demonstrate how evidence of harm to 
others supports his allegations that Defendants harmed him.” (emphases in original). 

Doc. 19 at 5. The Court disagrees. Seals and Stern are professors in the economics 
department of Auburn University. They collaborated to speak out against the Public 
Administration major and to provide information about it to publications. Regarding 

the retaliation against them, both men collaborated in the campaign to gain a separate 
school of economics and met with University leadership regarding the state of their 
department. Both men were punished at the same time and in the same way. Bruno 
was not very different. She was castigated for sending information to Stern and 

Seals and ultimately reassigned for her continued “loyalty” to them. These parallel 
narratives allege that the Auburn administration took an adverse view towards 
people involved in the scandal, and that retaliation was routine. When discrimination 

of the same sort occurs against a similarly situated coworker, it is admissible to prove 
the intent of Defendants to discriminate and retaliate. See Goldsmith v. Bagby 
Elevator Co., 513 F.3d 1261, 1286 (11th Cir. 2008). 

 Defendants are correct that allegations relating entirely to someone else and 
irrelevant to Plaintiff’s claims should be struck. Although the Court does not 
necessarily conclude that evidence underlying these allegations would be relevant 

for summary judgment or trial, the paragraphs of the complaint that contain only 
references to Stern and Bruno are relevant enough that they not be struck from the 
complaint. Specifically, the Court finds that none of these paragraphs violate the 
command of Federal Rule of Civil Procedure 12(f) that matter not be redundant, 

immaterial, impertinent, or scandalous, and therefore none will be struck. 
 B. Plaintiff has complied with the pleading standard laid out by Twombly-

 Iqbal 
 Under Twombly-Iqbal, a pleading must contain a short and plain statement of 
a claim showing that the pleader is entitled to relief. It need not include detailed 

factual allegations but must go further than a bare and conclusory accusation of 
harm. The complaint must contain enough factual matter to state a claim that is 
plausible on its face. This plausibility means that the court can draw a reasonable 

inference that the defendant is liable. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. 
Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). 

 Defendants argue that the complaint is not short and plain and contains 
editorializing as well as conclusory legal statements. The Court disagrees. 
Defendants have not argued that Plaintiff’s speech was not constitutionally protected 
and so Plaintiff need only show that there were actions taken against him that would 

make it less likely for him to speak and that were causally connected to that speech. 
Plaintiff has done both. 
 In the summer of 2015, Seals gave information and assistance to a reporter 
from the Wall Street Journal who was writing a story about the Public 

Administration major. In November of that year, Plaintiff served as a listed source 
for a story in the Alabama Gazette. Shortly thereafter, Plaintiff created a collage of 
photographs on his door which showed Auburn University leadership figures 

locking arms with Joseph Stalin. Up to this point, Seals had been exercising what 
Defendants do not dispute was his First Amendment right to free speech. 
 People began to notice the photo collage and in October of 2016, the 

retaliation began. Defendant Aistrup, whose picture was included in the collage, 
sent Seals an email asking that it be taken down and offering a close encounter for a 
better picture. Shortly thereafter, Defendant Aistrup approached Seals and, in front 

of witnesses, said “may the wings of corruption carry you far.” Later that same day, 
Defendant Aistrup began yelling at Seals for questioning his curricular proposals. 
During this string of retaliatory actions taken toward Seals, a series of similar actions 
were taken against Stern, including verbal reprimands and threats of firing. These 

acts were motivated explicitly by the speech of Seals and Stern. 
 Stern met with President Gogue about the retaliation he and Seals were being 

subjected to. Gogue agreed on April 11, 2017 to move the economics department 
out of the liberal arts college and away from the control of those retaliating against 
the faculty. On July 5, after Gogue’s departure, Defendant Leath and Defendant 
Boosinger nullified the agreement made between Gogue and the economics faculty. 
Plaintiff alleges that this caused him to lose the prestige of being part of an 

independent school of economics. While neither Defendants Boosinger nor Leath 
were explicit about their motivation, this move is significant when viewed in the 
greater context of retaliation. 

 On February 16 of 2018, another article was published about the scandal, this 
time in the Chronicle of Higher Education. The article contained an explicit mention 
of the collage on Seals’ door. Once again, Defendants do not contest that these 

activities constituted protected speech. Nevertheless, the administration began to 
take adverse actions against Seals shortly thereafter. 

 After being forced back into the college of liberal arts, the economics faculty 
was not provided with the new hires it needed to maintain itself. When Seals 
attempted to meet with Defendant Leath about this, he was continually refused. On 
May 25, 2018, Seals was relieved of his duties as Graduate Program Officer. In 

response to a student’s email about the firing, Defendant Aistrup wrote that he “did 
not take these actions without much contemplation and reflection.” This statement 
contradicts any implication by Defendants that too much time had passed between 

Seals’ speech and the actions taken against him. 
 On May 31, 2018, Jennifer Bruno, the economics department secretary, was 
instructed to advise all graduate students not to communicate with Seals. A graduate 

program committee was formed without Seals’ knowledge during the summer of 
2018 and the hours of teaching assistant support for his econometrics class were cut 
without explanation. Bruno was criticized and transferred to another department for 

giving Seals information about the actions taken against him. At the very least, this 
action implies that the administration viewed Seals in an adverse light. 
 When Seals met with Defendant Hardgrave in October of 2018, he was told 

that the decisions made were exclusively those of the new interim department chair, 
Defendant Kim. Defendant Hardgrave insisted that he did not get involved at the 
departmental level. When confronted with this information at a faculty meeting 

several days later, Defendant Kim contradicted Defendant Hardgrave and claimed 
that his decisions were guided by emails he received from Hardgrave. Here, the 
collaboration between Defendants is made explicit. 

 Plaintiff has clearly alleged that he had a constitutional right to speak, that the 
conduct he suffered was motivated by that speech, and that the conduct would likely 
deter someone similarly situated from exercising his First Amendment rights. He 

has also alleged at least one adverse act on the part of each Defendant. Finally, 
construing the allegations in the light most favorable to Plaintiff, a person of 
reasonable firmness would be deterred from speaking by Defendants’ alleged actions 
against Plaintiff. 

 C. The Complaint is not an impermissible shotgun pleading 

 A shotgun pleading is one that is “calculated to confuse the ‘enemy,’ and the 
court, so that theories for relief not provided by law and which can prejudice an 
opponent’s case…can be masked.” Weiland v. Palm Beach Cty. Sheriff's Office, 792 
F.3d 1313, 1320 (11th Cir. 2015). The paradigmatic example of a shotgun pleading 

is one that contains a variety of contract and tort claims interwoven in a haphazard 
fashion. See id. There are four types. The first type, and the type that Defendants 
accuse Plaintiff of indulging in, is one where “a complaint contains several counts, 

each one incorporating by reference the allegations of its predecessors, leading to a 
situation where most of the counts contain irrelevant factual allegations and legal 
conclusions.” Id. 

 To rebut, Plaintiff points out that his three claims have the same nucleus of 
operative fact. Indeed, the three claims are nearly identical. The first count alleges 
retaliation and the second two counts allege that people got together and agreed to 

retaliate. Thus, proving retaliation, or at least activity that implicates an agreement 
to retaliate, is relevant to all three counts. Evidence that mattered for the first claim 
will surely matter for each of the second two. 
 There is a marked difference between Plaintiff’s complaint and those 
referenced in Eleventh Circuit cases dismissing type one shotgun pleadings. The 

“perfect example” of this type of pleading is one where it is “virtually impossible to 
know which allegations of fact are intended to support which claims.” Anderson v. 
Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996). 

Such vague pleadings “exact an intolerable toll on the trial court’s docket, lead to 
unnecessary and unchanneled discovery, and impose unwarranted expense on the 
litigants, the court, and the court’s parajudicial personnel and resources.” Cramer v. 
State of Fla., 117 F.3d 1258, 1263 (11th Cir. 1997). To be blunt, the pleading should 

make it “impossible for any Defendant to reasonably frame an answer.” Jackson v. 
Bank of Am., N.A., 898 F.3d 1348, 1352 (11th Cir. 2018). Finally, this complaint is 
unlike those that courts in this Circuit have found to be insufficiently “short and 

plain.” See e.g. Fed. Home Loan Mortg. Corp. v. McGough, 2018 WL 5116844, at 
*1 (N.D. Ala. Oct. 19, 2018) (the amended complaint was 56 pages long and 
contained 326 paragraphs of allegations, representing a “morass of conflicting facts 
and unsubstantiated theories.”). 

 No such snafu is present here. Plaintiff’s complaint presents a cogent picture 
of the efforts of the economics faculty to publicize the Public Administration 

scandal, the adverse actions taken against him, and the circumstances of each action 
which suggest a connection between the two. It is far from impossible to know 
which allegations of fact are intended to support which claims; indeed, it isn’t even 
difficult. There is no unnecessary burden on the litigants or judicial resources. 

Therefore, the complaint will not be dismissed as an impermissible shotgun 
pleading. 

Counts Two and Three: The Federal and State-law Conspiracy Claims 
 Defendants’ central argument against liability under the latter two counts is 
the application of the intracorporate conspiracy doctrine. “The intracorporate 

conspiracy doctrine holds that acts of corporate agents are attributed to the 
corporation itself, thereby negating the multiplicity of actors necessary for the 
formation of a conspiracy. Simply put, under the doctrine, a corporation cannot 

conspire with its employees, and its employees, when acting in the scope of their 
employment, cannot conspire among themselves.” McAndrew v. Lockheed Martin 
Corp., 206 F.3d 1031, 1036 (11th Cir.2000) (en banc). The stated rationale for the 
doctrine is that actions related to employment are attributable to the employer and 

the employer cannot conspire with itself. Dickerson v. Alachua Cty. Comm'n, 200 
F.3d 761, 767 (11th Cir. 2000). Plaintiff argues that the Eleventh Circuit has not 
applied the doctrine in cases where an entity is not a named defendant and, in the 

alternative, the administrators were working solely for their own benefit and not 
within the scope of their employment. 
A. The doctrine blocks liability under federal law 

 The Eleventh Circuit has held that the intracorporate conspiracy doctrine 
applies in civil rights cases like this one. See id. Plaintiff argues that this doctrine 
has no application because he has not sued Auburn, the corporation. Plaintiff notes 

that “the purpose of the doctrine is not to protect a corporation’s employees but 
instead to prevent a corporation from being held liable for the conspiring of its 
employees.” Doc. 18 at 5. (citing McAndrew v. Lockheed Martin Corp., 206 F.3d 
1031, 1036 (11th Cir. 2000) (en banc)). Nonetheless, the en banc Eleventh Circuit 

rejected this argument in McAndrew and plainly held that “a corporation cannot 
conspire with its employees, and its employees, when acting in the scope of their 
employment, cannot conspire among themselves.” Id. (emphasis added). 

 Plaintiff argues that, even if the doctrine applies, there are exceptions for 
instances in which the acts of the employees were not authorized or were solely for 
the benefit of those employees. These arguments also fail. 

 First, Plaintiff argues that, if the benefit that Defendants obtained is solely 
personal and not merely an incidental benefit to the employee, then the doctrine will 

not apply. See Hartman v. Bd. of Trs. of Cmty. Coll. Dist. No. 508, 4 F.3d 465, 470 
(7th Cir. 1993).2 See also H&B Equip. Co. v. Int’l Harvester Co., 577 F.2d 239, 244 

2 This precedent originates outside of the Eleventh Circuit but the court will assume without 
deciding that such personal benefit is a requirement. 
(5th Cir. 1978). This argument fails. Plaintiff offers only a few benefits enjoyed by 
Defendants Hardgrave, Aistrup, and Kim that he argues were their sole motivations 

and not incidental. Defendants point out that as long as the benefits relate to pay or 
organizational restructuring, the benefit was not legally distinct from Auburn as the 
employer. Defendant Kim’s new salary after taking the position as interim 

department chair and the maintenance of Defendants Hardgrave and Aistrup’s status 
within the University were incidental benefits. The central benefit of their alleged 
actions—if any—was to Auburn. 

 Second, Plaintiff argues that any action taken by an employee that is 
unauthorized will not count as the action of the corporation and thus escape the 
doctrine. See Buschi v. Kirven, 775 F.2d 1240, 1253 (4th Cir. 1985). Defendants 

counter that in the Eleventh Circuit, the fact that an action was against policy or even 
violative of someone’s constitutional rights in no way renders that action outside the 
scope of employment. The test, is “whether the employee ... was performing a 
function that, but for the alleged constitutional infirmity, was within the ambit of 

[his] scope of authority (i.e., job-related duties) and in furtherance of the employer’s 
business.” Grider v. City of Auburn, Ala., 618 F.3d 1240, 1261 (11th Cir. 2010). 
See also Harbert Int’l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (holding 

that asking “whether it was within the defendant’s authority to commit the allegedly 
illegal act” would pose an “inquiry [that] is not more than an ‘untenable’ 
tautology.”). Here, the alleged retaliatory acts are: removing Seals as the Economics 
Department Graduate Program Officer, blocking his participation in Department 

committees, refusing to meet with him, unilaterally reabsorbing his department, and 
reducing his teaching assistant support. These were all actions that were firmly 
within the employment role of Defendants as employees of Auburn. 

 Defendants cannot be held liable for a federal conspiracy in violation of 
§1985. The decisions made by Defendants were administrative in nature and were 
tied to their duties at Auburn University. Since all the named conspirators are 

employees of the same entity, they cannot be liable under federal law. 
B. The doctrine also blocks liability under state law 

 The Alabama Supreme Court has also adopted the intracorporate conspiracy 
doctrine. See M & F Bank v. First Am. Title Ins. Co., 144 So. 3d 222, 234 (Ala. 

2013). In doing so, it has favorably cited McAndrew, the Eleventh Circuit’s leading 
case on the subject. Id. It does not appear that the Alabama Supreme Court has 
expressly addressed a case like this one in which the intracorporate conspiracy 
doctrine has been raised as a defense by employees in litigation where the employer 

was not a defendant. Accordingly, the Court “must predict how the [Alabama 
Supreme] court would decide this” issue. Molinos Valle Del Cibao, C. por A. v. 
Lama, 633 F.3d 1330, 1348 (11th Cir. 2011). Given the Alabama Supreme Court’s 
favorable treatment of Eleventh Circuit cases on the subject, there is little doubt that 
the Alabama Supreme Court would apply the intracorporate conspiracy doctrine in 

the same way the Eleventh Circuit has. See, e.g., Bradley v. Franklin, 2019 WL 
1111404, at *5 (N.D. Ala. Mar. 11, 2019) (reaching this conclusion). Accordingly, 
the state conspiracy count should also be dismissed. 

 CONCLUSION 
 For the foregoing reasons, the Court ORDERS as follows: 

 1. Defendants’ Motion to Dismiss is GRANTED IN PART AND DENIED 
 IN PART. 

 2. Defendants’ Motion to Dismiss Counts 2 and 3 is GRANTED. 
 3. Defendants’ Motion to Dismiss Count 1 is DENIED. 

 DONE and ORDERED this 18th day of December 2019. 

 /s/ Andrew L. Brasher 
 ANDREW L. BRASHER 
 UNITED STATES DISTRICT JUDGE