[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13485
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cv-23932-MGC

LINDAURA RAMOS,
JANVIER VILLARS,

Plaintiffs - Appellants,

versus

KATZMAN CHANDLER PA,
2009-2019 A for profit association,
FIRST SERVICE RESIDENTIAL,
2016-2017 a for profit management/accounting corporation,
AKAM ON-SITE,
2017-2018 A for profit management/accounting corporation,
LILIANA CALDERON,
Ass'n Secretary 2017 to present,
MORDECHAI ZARGER,
Ass'n V. President 2017-present, et al.,

Defendants – Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 26, 2021)

Before JORDAN, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Lindaura Ramos and Janvier Villars, proceeding pro se, appeal the district court's dismissal with prejudice of their amended complaint as an impermissible shotgun pleading. We affirm.

The complaint contained conclusory, vague statements and immaterial facts. Ms. Ramos and Mr. Villars asserted multiple claims against each defendant, without making clear which defendants were alleged to be responsible for which acts as to which plaintiff. The district court therefore did not abuse its discretion when dismissing the complaint.

**I**

The appellants filed a pro se 28-page complaint containing approximately 77 paragraphs against the Buckley Towers Condominium Association ("the Condo Association"); board members of the Condo Association; First Service Residential; accounting firms for the Condo Association-AKAM On-Site ("AKAM") and

2

Unlimited Property Management ("Unlimited"); and the Condo Association's law firm, Katzman Chandler ("the Law Firm"). *See* D.E. 1 at 1, 3-5. Ms. Ramos alleged that she owned a unit in the Condo Association for which she struggled to pay the fees the association assessed. *Id.* at 2-3, 5. Ms. Ramos then sold one percent of her unit to Mr. Villars in order to pay the fees. *Id.* at 5. The Condo Association placed a lien on the unit that the appellants allege was improper because it did not first attempt to collect the fees and because there should have been multiple missed payments before a lien was placed. *Id.* at 3, 7. Ms. Ramos attempted to resolve the issue with the Law Firm, but it did not respond to her. *Id.* at 5. Ms. Ramos also alleges that the board members ignored her proof of payments. *Id.*

The complaint further alleged that the accounting companies were "expected to maintain **Proper Accounting Practices** as accounting professionals." *Id.* at 4 (emphasis in original). The complaint stated that "[t]his Motion to Vacate is intended to present . . . wanton misconduct by the [Board] Officers in confederacy with the management/accounting company and [the law firm]; **the Enterprise**." *Id.* at 6 (emphasis in original).

In a "Legal Argument" section, the appellants asserted that the Condo Association lacked authority to place a lien on the unit because Ms. Ramos had paid her fees three weeks prior to the lien being placed. *Id.* The appellants also claimed that the Law Firm was unjustly enriched by collecting fees based on the fraudulent

3

lien, refused to look at Ms. Ramos' proof of payment, and defrauded the state court by making material misrepresentations. *Id.* at 6-7.

The complaint further asserted a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f, and Florida law for the attempt to collect a false debt, as Ms. Ramos allegedly owed one month of assessments, not the five months claimed. *See id.* at 7. The related concealment of Ms. Ramos' payment records, the complaint claimed, violated due process. *Id.* at 7-8. The complaint stated that "[t]o avoid reiterating the alleged facts; every succeeding [c]ause of [a]ction shall be understood to include, by inference every averment within the four corners." *Id.* at 8.

The appellants asserted the following claims: (1) deceptive collection practices and fraudulent inducement; (2) civil conspiracy, tortious interferences, breach of fiduciary duties, and wrongful foreclosure; (3) intentional infliction of emotional distress ("IIED"); (4) breach of third-party beneficiary contract; (5) conversion and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; and (6) conspiracy to interfere with civil rights. *Id.* at 8-20.[1]

---

[1] The counts as listed in the complaint are misnumbered and for clarity they are numbered here in order of appearance.

The counts in the complaint containing multiple causes of action did not specify the conduct applicable to each cause of action. *See e.g., id.* at 8-13, 18-22. All counts were alleged against all of the defendants and, though some conduct was identified as being exclusive to specific defendants, distinct offenses or violations were not identified. *See id.* at 8-22. For example, as to Count 1, the appellants alleged that the Condo Association's board members refused to help Ms. Ramos and concealed accounting records, that the Law Firm collected false debts as instructed by the Condo Association, and that AKAM filed a bad-faith affidavit of such debts. *See id.* at 8-11. Furthermore, Count 1 alleged that "the Officers, refus[ed] to correct an Association['s] wrongful debt claim, which they knew [ ] was detrimental to the Association['s] contract with the member's Property and LIFE, the Enterprise wantonly breached [its] fiduciary duty." *Id.* at 12 (emphasis in original). At the end of the complaint, Mr. Villars attested that his "sole interest" was "assisting in the protection of constitutional rights and in defense of the insular minority." *Id.* at 27.

The Condo Association, First Service, and the board members moved to dismiss the complaint. *See* D.E. 4 at 1. AKAM joined the motion to dismiss. *See* D.E. 5 at 1.

The defendants argued that the lawsuit was barred by defensive non-mutual collateral estoppel because it shared the same common nucleus of facts as five prior lawsuits litigated and adjudged in state court between the plaintiffs and the Condo

5

Association, the Law Firm, Liliana Calderon, Ilina Muxo, and Mordechai Zarger. *See* D.E. 4 at 1, 8-14 (citing to *Buckley Towers Condo., Inc. v. Villars, et al.*, Case No. 2016-000447-CC-23 (Fla. Miami-Dade County Ct. Jan. 12, 2016); *Villars v. Buckley Towers Bd. Of Dirs., et al.*, Case No. 2016-004101-CA-01 (Fla. 11 Cir. Ct. Dec. 22, 2017); *Buckley Towers Condo., Inc. v. Villars, et al.*, Case No. 2016-007415-CA-01 (Fla. 11 Cir. Ct. Mar. 24, 2016); *Villars v. Katzman Chandler Law Firm, et al.*, Case No. 18-029097-CA-01(06) (Fla. 11 Cir. Ct. Aug. 12, 2019); *Buckley Towers Condo., Inc. v. Villars*, Case No. 19-14571-CA-01(06) (Fla. 11 Cir. Ct. May 30, 2019)). Similarly, these defendants argued the lawsuit was precluded because the state court cases—the five prior lawsuits and an additional foreclosure lawsuit brought by the Association against Ms. Ramos and resulting in a default final judgment of foreclosure against her, *Buckley Towers Condo., Inc. v. Ramos, et al.*, Case No. 2017-013000-CC-23 (Fla. Miami-Dade County Ct. Dec. 17, 2018)— formed the basis for this lawsuit and had all been dismissed without appeal. Therefore, the defendants argued, reaching the merits of this lawsuit would amount to a federal district court sitting in direct review of a state court decision in violation of the *Rooker-Feldman* doctrine. *See* D.E. 4 at 8. *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The defendants also identified several deficiencies with the complaint. For example, there were no allegations that (1) First Service was a debt collector or that the board members attempted to collect a debt from Ms. Ramos and Mr. Villars in Count 1; (2) specified overt actions were undertaken by each defendant in Count 2; (3) the contracts between the Condo Association and its lawyers or AKAM benefited either plaintiff; and (4) the collection of money was illegal under RICO. *See* D.E. 4 at 10-11. They also noted, in relation to some of the claims, that it was unclear whether Mr. Villars raised a claim based on his ownership interest in the unit or was a third-party to the suit based on the third-party disclaimer in the complaint stating "Mr. Villars [ ] sole interest in this case is in assisting in the protection of constitutional rights and in defense of the insular minority class." D.E. 1 at 27. The appellants filed a response to the motion to dismiss. *See* D.E. 7.

The district court *sua sponte* struck the complaint without prejudice and denied any pending motions as moot. *See* D.E. 26 at 1, 3. The district court ruled that the complaint was an impermissible shotgun pleading that failed to comply with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure. *See id.* at 2. The district court ruled that the complaint was full of conclusory, vague, and immaterial facts that did not obviously connect to a particular cause of action and contained citations to laws and statutes whose application were unclear (citing the "Legal Argument" section of the complaint). *See id*. The district court further noted that Ms. Ramos and

7

Mr. Villars "lump[ed]" four state law causes of action in Count 2, and that they also cited a federal mail fraud statute in support of those claims, but failed to delineate what facts correlated to what cause of action. *See id.* The district court pointed out that the factual allegations under the RICO claim did not seem to pertain to such a cause of action. *See id.* at 2-3. Thus, the district court struck the complaint. It gave the plaintiffs time to file an amended complaint, and explained the pleading requirements under Rules 8(a) and 10(b). *See id.*

The plaintiffs filed a 24-page amended complaint with approximately 87 paragraphs against the same defendants, with the exception of the Condo Association and Unlimited Property Management. *See* D.E. 27 at 1. The amended complaint reiterated verbatim the original complaint's factual allegations, its "Legal Argument" section, the adoption of the factual allegations for each count, and Mr. Villars's third-party disclaimer. *See id.* at 2-8, 23. It did not reassert causes of action for a RICO violation or for conspiracy to interfere with civil rights, but it did add a claim for mail fraud. *See id.* at 20. In response to the district court's order, the plaintiffs divided the counts and discussion according to causes of action. *See, e.g., id.* at 8-10. The amended complaint, however, largely reiterated the discussion of each cause of action from the original complaint. *See id.* at 8-22.

The amended complaint also made minor changes to the substantive counts. For example, it reduced its discussion of the IIED claim and, regarding the contract,

added a paragraph that further explained the third-party beneficiary relationship with the Condo Association's subcontractors. *See id.* at 15-16. The amended complaint, however, still largely failed to specify what conduct pertained to each individual defendant's potential liability. It also retained such statements as "But for being a low-income, [widow] with no family to assist her [to] pay for an attorney, she had to ensure this illegal action more severely, **because it disgracefully attacks her self-worthiness in this country**." *Id.* at 15 (emphasis in original).

The amended complaint further alleged a whole raft of crimes and tortious conduct on the part of the defendants, yet made no distinction as to which defendant was responsible for which act. In addition, the conduct that was alleged to have taken place against Mr. Villars was at best unclear. *See id.*

The district court subsequently entered an order *sua sponte* dismissing the amended complaint and closed the case. *See* D.E. 31 at 1. The district court found that the plaintiffs had not cured the defects that required the striking of the initial complaint and dismissed the action with prejudice. *See id*. This appeal followed.

## II

We review the dismissal of a shotgun pleading under Rule 8 for abuse of discretion. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018). A document filed *pro se* must be liberally construed and should be held to less stringent standards than formal pleadings drafted by lawyers. *See Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007). Liberal construction of pro se pleadings, however, "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quotation omitted).

## III

A district court has the inherent authority to control its docket and ensure the prompt resolution of lawsuits, which includes the ability to dismiss a complaint for failing to comply with Rules 8(a) and 10(b). *See Shabanets*, 878 F.3d at 1294. A district court is generally required to allow a litigant at least one chance to remedy any deficiencies before dismissing a complaint with prejudice. *See id.*

Shotgun pleadings violate Rule 8, which requires "a short and plain statement of the claim" showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). Pleadings of this sort fail to give defendants adequate notice of the claims against them and the grounds upon which the claims rest. *See Shabanets*, 878 F.3d at 1295. Shotgun pleadings waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts. *See id.*

We have previously described four types of shotgun pleadings: (1) a complaint containing multiple counts where each count adopts all the allegations of all the preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that does not separate each cause of action or claim for relief into different counts; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *See Weiland v. Palm Beach Cty. Sherriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). The amended complaint here implicated each of the above-mentioned forms of shotgun pleadings in some form. Although a district court is required to show some lenience towards *pro se* parties, that lenience is not boundless. *See Erickson*, 551 U.S. at 94. Even after liberally construing the amended complaint, the district court did not err in dismissing it with prejudice after providing one opportunity to amend. The district court provided examples of some of the errors in the original complaint, such as noting that the complaint made vague allegations and had a legal discussion unconnected to any counts, and the motion to dismiss identified additional deficiencies. *See* D.E. 4 at 10-11; D.E. 26 at 2-3.

In response to the district court's initial order, the plaintiffs filed a nearly identical complaint that still constituted a shotgun pleading on several fronts.

11

*Compare* D.E. 1 *with* D.E. 27. The amended complaint (1) made vague, conclusory allegations, (2) did not identify specific violations by specific defendants, and (3) did not separate the "Legal Argument" section into counts. *See* D.E. 27 at 8-23. Given the deficiencies in the amended complaint, the district court did not subject the appellants to a heightened pleading standard. Nor did it fail to liberally construe that complaint. *See Weiland*, 792 F.3d at 1321-23; *Shabenets*, 878 F.3d at 1295. On this record, the district court did not abuse its discretion in declining to allow more than one opportunity to amend before dismissing with prejudice. *See Shabenets*, 878 F.3d at 1294.[2]

## IV

The district court did not abuse its discretion by dismissing the amended complaint with prejudice. We therefore affirm.

**AFFIRMED.**

---

[2] As to any other issues raised by the appellants, we summarily affirm.