[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-13289

_____

INFORM INC.,

Plaintiff-Appellant,

*versus*

GOOGLE LLC,
ALPHABET INC.,
YOUTUBE, LLC,
JOHN DOES 1-100,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-05362-JPB

_____

Before JORDAN, ROSENBAUM, Circuit Judges, and STEELE,[*] District Judge.

PER CURIAM:

Inform, a digital media advertising company, brought an antitrust lawsuit against Google; its parent company, Alphabet; Google's subsidiary, YouTube (collectively, we refer to these three defendants as the "Google defendants"); and John Does 1–100, for alleged violations of the Sherman Act and the Clayton Act, and for state-law tortious interference. The district court dismissed without prejudice Inform's original complaint as a shotgun pleading. It then dismissed Inform's new complaint on shotgun-pleading grounds again, this time with prejudice. It also concluded that Inform had not shown antitrust standing and that dismissal was appropriate on this ground as well. Inform now appeals.

---

[*] The Honorable John Steele, United States District Judge for the Middle District of Florida, sitting by designation.

Upon consideration, and with the benefit of oral argument, we reverse the district court's dismissal order and remand the case for further proceedings.

## I.

### A.     The district court dismisses Inform's original complaint as a shotgun pleading.

Inform filed a complaint in the United States District Court for the Northern District of Georgia against Google LLC, Alphabet Inc., YouTube, and John Does 1–100.  The complaint asserted federal antitrust claims and a Georgia state-law claim for tortious interference.  The Google defendants moved to dismiss the complaint.  They argued that the complaint failed to state a claim and that Inform lacks Article III and antitrust standing.  Besides that, they characterized the complaint as an impermissible shotgun pleading.

Upon consideration, the district court granted in part and denied in part the motion to dismiss.  It didn't rule on the merits of the Google defendants' motion but instead found that the complaint was a "quintessential shotgun pleading of the kind the Eleventh Circuit has condemned repeatedly."  The district court identified the particular pleading deficiencies, dismissed the complaint without prejudice, instructed Inform what a proper complaint should look like, and ordered Inform to file an amended complaint in accordance with those instructions.

### B.     Inform files an amended complaint.

Two weeks after the district court issued that order, Inform filed its first amended complaint.  It asserted the following seven causes of action:  (1) violation of Section 1 of the Sherman Act (unreasonable restraints on trade); (2) violation of Section 2 of the Sherman Act (monopoly maintenance); (3) violation of § 2 of the Sherman Act (monopoly leveraging); (4) violation of § 2 of the Sherman Act (attempted monopolization); (5) violation of § 2 of the Sherman Act (exclusive dealing); (6) violation of § 3 of the Clayton Act (exclusive dealing and tying); and (7) tortious interference.

The amended complaint details a long history of Google's allegedly anticompetitive practices.[1]  Inform says that Google is "the largest monopoly in the history of the U.S. antitrust laws" and claims that it enjoys monopoly power in at least seven markets:  (1) "internet search" market; (2) "licensable mobile device operating system" market; (3) "ad server" market; (4) "web browser" market; (5) "online advertising" market; (6) "search advertising" market; and (7) "online video advertising" market.  As it pertains to Inform, this case primarily involves the "online advertising" and "online video advertising" markets.

Online advertising consists of marketing advertisements, which are delivered through the internet on both computers and

---

[1] We view and recite these factual allegations in the light most favorable to Inform, as we must at this juncture in the proceedings.  *See Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1295 (11th Cir. 2010).  The actual facts may or may not be as alleged.

mobile devices.  When the internet first started to take off in the early 1990s, traditional print publishers created websites and began to publish their substantive content online.  That online content earned (and continues to earn) the attention of many users' eyeballs.  And the attention of those users' eyeballs opened the door to advertising profits through various forms of online advertising, including search advertising, display advertising, online video advertising, and social media advertising.  Just like other advertising media, online advertising often involves (1) a publisher, who integrates advertisements into its online content; (2) an advertiser, who provides the advertisements to be displayed; and (3) advertising agencies, which help create and place the ads.

Inform is a digital media company that provides a platform of services to online publishers, content creators and online advertisers.  It manages the distribution and delivery of video advertisements from content creators into articles on newspaper, magazine, radio, and television websites.  Inform works with both publishers (*i.e.*, website operators for newspaper, magazine, radio, and television sites) and advertisers.  Inform's platform enables publishers to pair corresponding video with their original text content to enhance the user's experience and understanding of the publisher's story.  And for advertisers, Inform provides brands with an opportunity to deliver video advertisements to the audience most likely to consume their products.

At its peak, Inform had an inventory of ad space from a network of approximately 5,000 publishers.  Inform says that this

"aggregated digital audience allowed [it] to work with a brand (or the advertising agency representing a brand) to optimize the placement of its ads to reach that brand's specific target demographic." Inform claims that it garnered revenue of more than $180 million from 2010 to 2017.

According to Inform, the Google defendants' alleged anticompetitive conduct decimated its business. Because a company's advertising services must be compatible with Google's ad products and Google's Chrome Browser, Inform claims, Google can influence industry standards in its own favor. Google accomplishes that by setting arbitrary and anticompetitive rules for viewing and listening to video content and video advertisements. And those rules ultimately preference Google, YouTube, and Google's other products and services.

In particular, Inform focuses on Google's decision to transition from Flash to HTML5. Flash is a proprietary digital software developed by Adobe. HTML5, on the other hand, is open-source technology, meaning that anyone can use, inspect, modify, or enhance it. Inform asserts that Flash was the standard for playing video on websites for more than a decade, so most advertising content was originally developed in Flash. But in 2014, Inform continues, Google began offering Flash-to-HTML5 conversion tools for the Google Display Network that would create a backup HTML5 video advertisement to run when Flash was disabled or otherwise not supported.

Then, on January 27, 2015, YouTube announced that it would no longer use Flash by default and would instead use the HTML5 video player in Google's Chrome and other browsers. In February 2015, Google started to automatically convert both existing and new advertisements that were supported by Flash to HTML5, but only when the advertiser uploaded its ads through Google's AdWords, AdWords Editor, or third-party tools that worked with Google's ad platform.

As Inform tells the story, in June 2015, Google Chrome began to "intelligently pause" ads that were supported by Flash. By 2017, Google disabled Flash entirely in favor of HTML5. Because Google disabled Flash, if an advertisement supported by Flash was presented to a consumer, a pop-up would appear to the consumer asking if that consumer "wanted to allow Adobe Flash to run on this site?" By clicking "allow," a consumer could still see the advertisement. But Inform contends that most consumers would not authorize Flash to run, so they would not see the advertisement.

Even though HTML5 is open-source and not owned by Google, Inform contends that Google has more control over how, when, and what videos are played with HTML5 than it had before with Flash. Inform alleges that, because of Google's transition to HTML5, advertisers that had ads supported by Flash either had to convert their content to HTML5 or migrate to the Google network to reach target users. When Google disabled Flash in 2017, it had the "immediate effect," according to Inform, of foreclosing a significant portion of online advertisers from reaching users and target

audiences.  As a result of this conduct, Inform asserts that Google "syphoned off customers from Inform and other competitors[,] and hundreds of online advertisers and publishers withered and died, while Google and YouTube plundered valuable video advertisements that had supported publisher's websites."   In Inform's words, it was "severely impacted overnight," and its business was sent "plummeting."

Based on this alleged conduct, Inform contends that Google engaged in the following anticompetitive conduct: (1) exclusive dealing and anticompetitive contracts; (2) illegal tying and bundling of services; (3) unilateral setting and altering of technological standards; (4) manipulative and technological blocking, exclusion, downgrading and denial of interoperability; (5) preferential treatment of its own products and services; (6) denial of interoperability and purposeful incompatibility; (7) opacity as to function, pricing and data; and (8) predatory pricing.

Inform also alleges that it is not alone in suffering harm from Google's anticompetitive conduct.  The complaint also contends that Google's conduct harms consumers by degrading their privacy, stifling innovation, raising prices, and decreasing the quality and variety of products available to consumers.

C.    *The district court dismisses with prejudice the amended complaint again as a shotgun pleading and, for the first time, on antitrust standing grounds.*

In response to Inform's filing of its amended complaint, the Google defendants filed another motion to dismiss. They argued that the amended complaint was still a shotgun pleading and failed to cure four of the five deficiencies that the district-court order had outlined. And once again, they asserted that Inform lacked Article III and antitrust standing and failed to plead any claims for relief.

The district court granted the Google defendants' motion, agreeing that the amended complaint was still an impermissible shotgun pleading. In the district court's view, the amended complaint is "cumbersome" and "suffers from some of the same deficiencies as the first." Because the district court concluded that the amended complaint is "rife with immaterial factual and conclusory allegations" and "does not specify which defendants are responsible for which act or omissions," the district court dismissed it—this time with prejudice.

Besides concluding that the amended complaint is an improper shotgun pleading, the district court also ruled that dismissal was required because Inform had not shown antitrust standing. The court found that Inform had not met the two factors to establish antitrust standing: (1) that it had suffered an "antitrust injury," and (2) that it was an "efficient enforcer of antitrust laws."

In the end, the district court dismissed all claims with prejudice, except for the state-law tortious-interference claim. Inform timely appealed. We have jurisdiction. 28 U.S.C. § 1291.

II.

We review a dismissal on shotgun-pleading grounds for an abuse of discretion. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018).

We review issues of antitrust standing de novo. *Fla. Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997).

## III.

We first address whether the district court abused its discretion when it dismissed Inform's amended complaint with prejudice on shotgun pleading grounds. We then examine whether the district erred in dismissing the amended complaint on the alternative ground that Inform does not have antitrust standing to pursue its claims. Finally, we consider whether to reach the merits of the Google defendants' Rule 12(b)(6) arguments that the district court never addressed.

### A.    *The amended complaint is not a shotgun pleading.*

A shotgun pleading is a complaint that violates Federal Rule of Civil Procedure 8(a)(2), Rule 10(b), or both. *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). We have explained that "the spirit, if not the letter," of the Federal Rules of Civil Procedure prohibit shotgun pleadings "because they are calculated to confuse the enemy, and the court," *id.* We've also said that shotgun pleadings "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court, and the court's parajudicial personnel and resources." *Jackson v. Bank of Am., N.A.*,

898 F.3d 1348, 1356–57 (11th Cir. 2018) (quoting *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997)).  As these words suggest, we "have little tolerance for shotgun pleadings."  *Vibe Micro*, 878 F.3d at 1295.

We have identified four main types of shotgun pleadings. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015).  *First*, the most common type is a complaint "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321.  *Second*, the next most common type is a complaint that "does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22.  *Third* is a complaint that does "not separate[e] into a different count each cause of action or claim for relief." *Id.* at 1322–23.  And *fourth*, we've described the "relatively rare sin" of "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*  Dismissal on shotgun-pleading grounds is appropriate when "it is virtually

impossible to know which allegations of fact are intended to support which claim(s) for relief." *Id.* at 1325.

Here, Inform's amended complaint lacks the defining feature of shotgun pleadings, as it is not "virtually impossible" to discern which factual allegations support each of Inform's claims. To be sure, the complaint is certainly long and may not be a paragon of clarity. But that did not prevent the district court or the Google defendants from understanding the basis of Inform's core antitrust claims for monopolization offenses, exclusive dealing, and tying. The district court even included a chart in its dismissal order that shows exactly which paragraphs correspond to which count:

| Count | Paragraphs Incorporated |
| --- | --- |
| I (Unreasonable Restraints on Trade) | 6-7, 9, 69-78, 102-157 |
| II (Monopoly Maintenance) | 6-7, 9, 69-78, 102-157 |
| III (Monopoly Leveraging) | 6-7, 9, 69-78, 102-157, 159-165 |
| IV (Attempted Monopolization) | 9, 102-157 |
| V (Exclusive Dealing) | 6-7, 69-78, 126, 132-157 |
| VI (Exclusive Dealing and Tying) | 6-7, 69-78, 126, 131-157 |
| VII (Tortious Interference) | 127-130 |

And in our view, the allegations don't make it "virtually impossible" to identify the facts supporting each count.

The amended complaint also sufficiently alleges the conduct attributable to each defendant. The factual allegations describe Google as the active wrongdoer that acquired other entities, dominated various markets, and excluded rivals through allegedly improper conduct. And the amended complaint added multiple specific allegations of wrongdoing by YouTube, as well as facts showing how YouTube ostensibly contributes to and benefits from

Google's conduct.  Even if the amended complaint did not sufficiently allege a basis to hold YouTube and Alphabet liable with Google as a single economic entity, *see Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), that's a Rule 12(b)(6) problem, not a shotgun-pleading problem.

In short, while the amended complaint may display some of the characteristics of what we have described as shotgun pleadings, we do not think the complaint fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Weiland*, 792 F.3d at 1323.

### B.    *Inform has sufficiently pled antitrust standing*

The district court also ruled that dismissal was appropriate because Inform had not shown antitrust standing.  We disagree and conclude that, based on the allegations in its complaint, Inform enjoys standing to pursue its antitrust claims.[2]

---

[2] As a preliminary matter, we also find that Inform's allegations satisfy the requirements for Article III standing.  To establish Article III standing, a plaintiff must show that they suffered an injury in fact, which is fairly traceable to the defendant's conduct and which will be redressed by a favorable decision. *See, e.g., Laufer v. Arpan LLC*, 29 F.4th 1268, 1272 (11th Cir. 2022).  Here, Inform alleges that the Google defendants' anticompetitive conduct decimated Inform's business.  And that allegation easily satisfies the injury-in-fact requirement. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury under Article III.").  That alleged injury is also fairly traceable to the Google defendants' anticompetitive conduct. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (explaining that

To show antitrust standing, "a plaintiff must do more than satisfy the basic 'case or controversy' requirements" necessary to establish Article III standing. *Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1299 (11th Cir. 2010). Besides those constitutional requirements, a plaintiff must demonstrate that it meets a number of "prudential considerations aimed at preserving the effective enforcement of the antitrust laws." *Id.* (quoting *Todorov v. DCH Healthcare Auth.*, 912 F.2d 1438, 1448 (11th Cir. 1991)).

We use a "two-prong test" to determine whether a plaintiff has antitrust standing. *Id. First*, a plaintiff must allege that it has suffered an "antitrust injury." *Id.* An antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). "The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation. It should, in short, be the type of loss that the claimed violations would be likely to cause." *Id.* (cleaned up).

---

merely "showing that a plaintif's injury is indirectly caused by a defendant's actions satisfies the fairly[-]traceable requirement."). As Inform's complaint tells it, the disabling of Flash on Google platforms in 2017 had the "immediate effect" of decimating Inform's business. Finally, a favorable decision will redress Inform's alleged injury, as Inform seeks compensatory damages for the injury it alleges it has suffered. *See id.* ("Plaintiffs allege a monetary injury and an award of compensatory damages would redress that injury.").

And *second*, a plaintiff must establish that it is an "efficient enforcer of the antitrust laws." *Id.* We consider several non-exhaustive factors in determining whether a plaintiff would be an efficient enforcer of the antitrust laws, including the directness of the injury; the remoteness of the injury; whether other plaintiffs are better suited to bring suit; whether the damages are highly speculative; whether the calculation of damages would be highly complex and run the risk of duplicative recoveries; and whether the plaintiff would be able to efficiently and effectively enforce the judgment. *See id.* (citing *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 537–46 (1983)).

Inform has sufficiently alleged both requirements to establish antitrust standing in its amended complaint. As for antitrust injury, Inform has alleged that it lost millions of dollars because Google excluded it from competing in the online advertising markets. The amended complaint also asserts that Google excluded *all* competitors from the online advertising markets by disabling and disparaging its competitors' products and services; illegally conditioning the purchase of ads on its subsidiary YouTube on Google's ad-buying tools; using its control over the dominant ad auction to preference its own offerings and disadvantage those of rivals; and purposefully rendering some of its dominant products and services incompatible with its competitors' offerings.

Google allegedly did all of that to avoid and eliminate competition, rather than meet it on the merits. And in so doing, Google

not only harmed its competitors, but also hurt consumers, allegedly degrading their privacy, stifling innovation, raising prices, and decreasing the quality and variety of products available to consumers. These allegations suffice to establish antitrust injury at the pleading stage. *See Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 466 F.3d 961, 967–68 (11th Cir. 2006) (holding that plaintiff pled sufficient antitrust injury when alleged monopolist "denied consumers . . . the benefit of the pressure to lower prices that would likely come about if the [plaintiff] became a viable competitor").

Inform also contends that it is an efficient enforcer of the antitrust laws as a would-be competitor excluded from the online advertising markets. We agree. On this issue, our decision in *Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291 (11th Cir. 2010), controls. There, a plaintiff hospital alleged that a competing, dominant hospital excluded it from the relevant market through tying agreements with key insurers. The district court concluded that the injury was "indirect" because several steps had to occur before the plaintiff lost revenue—specifically, insurers first had to agree to deal with the defendant, and then their policy holders had to choose the defendant's hospital instead of the plaintiff's. *Id.* at 1303–04. We reversed, observing that "although [the plaintiff's] injury occurs several steps down the causal chain, once [the defendant] starts the ball rolling with its tying arrangement, [the plaintiff's] injury all but inevitably follows." *Id.*

Similarly, Inform has alleged that because of Google's dominance in the online advertising markets, a rational publisher or advertiser would not now select a non-Google ad service. As in *Palmyra Park*, then, it asserts that once the Google defendants "started the ball rolling" by switching to HTML5, it was "inevitabl[e]" that its competitors, like Inform, would be excluded. *Id.* And as a result, Inform avers that Google has all but eviscerated competition in the relevant markets. So, Inform concludes, its desire to gain access to the market "is entirely consistent with increasing competition." *Id.* 1304. As we've noted, we agree.

The Google defendants argue, and the district court found, that advertisers, publishers, and Adobe are better suited to bring this action. Perhaps. But Inform need be only "an efficient enforcer" of the antitrust laws, *Palmyra Park*, 604 F.3d at 1299, not the only or even the most efficient one. Inform clears that bar at this stage in the litigation.

In sum, Inform has sufficiently pled that it has antitrust standing.

## C. *We decline to address the Google parties' Rule 12(b)(6) arguments*

Finally, the Google defendants ask us to alternatively affirm the district court based on the merits of its Rule 12(b)(6) arguments—even though the district court has never reached those arguments. We decline. Although it's true that we may affirm on a ground not addressed by the district court, *see Fla. Wildlife Fed'n*

*Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1316 (11th Cir. 2017), we ordinarily prefer that district courts address issues in the first instance. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 n.4 (11th Cir. 2001). So we leave those arguments for the district court's consideration on remand.

## IV.

For the reasons we explained, we reverse the decision of the district court and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**